86 F.Supp. 109 (1949)
UNITED WEST COAST THEATRES CORPORATION et al.
v.
SOUTH SIDE THEATRES, Inc., et al. (TWENTIETH CENTURY-FOX FILM CORPORATION et al., Third-Party Defendants).
Civ. No. 7282.
United States District Court S. D. California, Central Division.
July 26, 1949.
*110 Newlin, Holley, Sandmeyer & Tackabury, Frank R. Johnston, Los Angeles, Cal., for plaintiffs and third-party defendants Twentieth Century-Fox Film Corp., Charles P. Skouras and Spyros P. Skouras.
O'Melveny & Myers, Jackson W. Chance, Los Angeles, Cal., for third-party defendant Paramount Pictures, Inc.
Loeb & Loeb, Harry B. Swerdlow, Los Angeles, Cal., for third-party defendant Loew's, Inc.
Freston & Files, Gordon L. Files, Los Angeles, Cal., for third-party defendant Warner Bros. Pictures, Inc.
Mitchell, Silberberg & Knupp, Leonard A. Kaufman, Los Angeles, Cal., for third-party defendants RKO Pictures, Inc. and Columbia Pictures Corp.
Macfarlane, Schaefer & Haun, William P. Gamble, James H. Arthur, Los Angeles, Cal. (Russell Hardy, Washington, D. C., of counsel), for defendants and counter-claimants.
MATHES, District Judge.
Plaintiffs commenced this action on July 1, 1947, seeking a declaratory judgment as to "the rights and other legal relations", 28 U.S.C.A. § 2201, of the parties to an agreement relating to certain motion-picture theatres in the city of Los Angeles. With their second amended answer defendants have interposed a counterclaim against plaintiffs and third-party defendants for treble damages and injunctive relief pursuant to §§ 4 and 16 of the Clayton Act, 38 Stat. 731, 737, 15 U.S.C.A. §§ 15, 26, because of alleged violations of the anti-trust laws of the United States affecting the theatres in question.
Plaintiffs and third-party defendants now move to dismiss the counterclaim upon the ground that each claim set forth therein is barred by the applicable statute of limitations. Specifically it is urged that the one-year period of limitation found in § 340(1) of the California Code of Civil Procedure should be applied; and, in the alternative, that the counterclaim is barred in all events by the three-year period specified in § 338 (1) of that Code.
All parties concede for the purposes of the motions that each cause of action for damages asserted in the counterclaim accrued on or prior to April 1, 1941; and that the period of limitation is that fixed by applicable California statute. Chattanooga Foundry & Pipe Works etc., v. City of Atlanta, 1906, 203 U.S. 390, 397-399, 27 S.Ct. 65, 51 L.Ed. 241; Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 1936, 85 F.2d 742, 750-751. It is agreed also that the facts alleged in the counterclaim permit the affirmative defense of bar of the statute first to be raised by motion to dismiss pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S.C.A., notwithstanding the provisions of Rule 8(c). See: Brictson v. Woodrough, 8 Cir., 1947, 164 F.2d 107, 110; Berry v. Chrysler Corp., 6 Cir., 1945, 150 F.2d 1002, 1003; Continental Collieries v. Shober, 3 Cir., 1942, 130 F.2d 631, 635-636; Abram v. San Joaquin Cotton Oil Co., D.C.S.D.Cal.1942, 46 F. Supp. 969, 974-975.
Section 340(1) of the California Code of Civil Procedure provides that "An action upon a statute for a penalty or forfeiture, when the action is given to an individual, * * *" shall be commenced within one year. Section 338(1) provides that "An action upon a liability created by statute, other than a penalty or forfeiture * * *" shall be commenced within three years.
The courts of California have not determined which of these two statutes governs causes of action such as asserted in the counterclaim at bar, (cf. Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 633, 61 S.Ct. 754, 85 L.Ed. 1089), but the nature of the remedies accorded a private person "injured in his business or property by reason of anything forbidden in the antitrust laws", 15 U.S.C.A. §§ 15, 26, would seem to mark the liability as one "created by statute, other than a penalty or forfeiture." cf. Fleitmann v. Welsbach Street Lighting Co., 1916, 240 U.S. 27, 29, 36 S.Ct. 233, 60 L.Ed. 505; United Copper Securities Co. v. Amalgamated Copper Co., 1917, 244 U.S. *111 261, 137 S.Ct. 509, 61 L.Ed. 1119. The Court of Appeals of this Circuit has accordingly held the three-year period specified in § 338(1) to be the California statute of limitations properly applicable to actions for damages arising under the antitrust laws. Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 1948, 170 F.2d 569, 576-578; cf. Foster & Kleiser Co. v. Special Site Sign Co., supra, 9 Cir., 85 F.2d at pages 751-753; Culver v. Bell & Loffland, 9 Cir., 1944, 146 F.2d 29, 31.
The local statute of limitations applicable to actions for damages will also be adopted and applied, in exercise of the equity jurisdiction of this court, to the injunctive relief sought pursuant to § 16 of the Clayton Act, 15 U.S.C.A. § 26. Russell v. Todd, 1940, 309 U.S. 280, 293, 60 S.Ct. 527, 84 L.Ed. 754.
Each claim for damages asserted in the counterclaim having admittedly accrued as a cause of action on or prior to April 1, 1941, and this action having been commenced more than six years thereafter, on July 1, 1947, the counterclaim is long barred by § 338(1) of the California Code of Civil Procedure, unless operation of this statute has in some manner been tolled.
Defendants and counterclaimants urge that the California statute was tolled by the Act of October 10, 1942, 56 Stat. 781, which declares: "That the running of any existing statute of limitations applicable to violations of the anti-trust laws of the United States, now indictable or subject to civil proceedings under any existing statutes, shall be suspended until June 30, 1945, or until such earlier time as the Congress by concurrent resolution, or the President, may designate. This Act shall apply to acts, offenses, or transactions where the existing statute of limitations has not yet fully run, but it shall not apply to acts, offenses, or transactions which are already barred by the provisions of existing laws." On June 30, 1945, this statutory suspension was extended until June 30, 1946, 59 Stat. 306.
Plaintiffs and third-party defendants contend that the Act "was intended to apply only to criminal proceedings and civil suits by the government and did not apply to suits by private persons." To the extent that it operated to extend the three-year period of limitation applicable to criminal offenses against the anti-trust laws, (See: United States v. Kissel, 1910, 218 U.S. 601, 606, 610, 31 S.Ct. 124, 54 L.Ed. 1168; 18 U.S.C.A. § 3282; United States v. Goldman, 1928, 277 U.S. 229, 237-239, 48 S.Ct. 486, 72 L.Ed. 862; Gompers v. United States, 1914, 233 U.S. 604, 607, 610-613, 34 S.Ct. 693, 58 L.Ed. 1115), the suspension was necessarily for the sole benefit of the Federal Government.
As to matters other than criminal, the Act suspends "the running of any existing statute of limitations applicable to violations of the antitrust laws * * * subject to civil proceedings under any existing statutes * * *." But state statutes of limitations are held powerless to bar any civil proceeding by the United States, unless a Federal statute so permits. United States v. Summerlin, 1940, 310 U.S. 414, 416-418, 60 S.Ct. 1019, 84 L.Ed. 1283; Du Pont de Nemours & Co. v. Davis, 1924, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788; United States v. Thompson, 1878, 98 U.S. 486, 489-490, 25 L.Ed. 194. Neither is the equitable defense of laches available against the Government. Guaranty Trust Co. of New York v. United States, 1938, 304 U.S. 126, 132-133, 58 S.Ct. 785, 82 L. Ed. 1224; Chesapeake & Delaware Canal Co. v. United States, 1919, 250 U.S. 123, 125, 39 S.Ct. 407, 63 L.Ed. 889; cf. United States v. Southern Pac. Co., 1922, 259 U.S. 214, 240, 42 S.Ct. 496, 66 L.Ed. 907.
So there was no occasion to suspend any statute of limitations applicable to civil proceedings under the anti-trust laws in so far as the United States alone was concerned, except to protect civil proceedings by the Government for the forfeiture of "property owned * * * pursuant to * * * conspiracy * * *" as provided in § 6 of the Sherman Act, 15 U.S.C.A. § 6, and 28 Stat. 570, § 76, 15 U.S.C.A. § 11. A Federal statute of limitations has long been applicable to such civil proceedings, and the Act at bar unquestionably operated to suspend that statute. See 28 U.S.C.A. § 2462, formerly § *112 791; Friedenstein v. United States, 1888, 125 U.S. 224, 231-232, 8 S.Ct. 838, 31 L.Ed. 736; Stockwell v. United States, 1871, 13 Wall. 531, 543, 80 U.S. 531, 543, 20 L.Ed. 491; Adams v. Woods, 1805, 2 Cranch 336, 341-342, 6 U.S. 336, 341-342, 2 L.Ed. 297.
The literal meaning of the language of the Act in question makes the suspension applicable not alone to civil proceedings by the Government to declare forfeitures pursuant to §§ 6 and 11 of 15 U.S.C.A., but to all violations of the anti-trust laws "subject to civil proceedings under any existing statutes." To paraphrase the words of Mr. Chief Justice Vinson in Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 959 (1949): The reach of "civil proceedings under any existing statutes" is unmistakable. The phrase is used without qualification, without hint that some should be excluded. From the statutory text alone, it is impossible to read the section as excising this case from "civil proceedings under any existing statutes."
The essence of the argument to limit the scope of the Act is that "the legislative history * * * establishes beyond reasonable doubt that [the] statute was intended to apply only to anti-trust suits initiated by the United States." In the language of Ex parte Collett, supra, 337 U.S. at 55, 69 S.Ct. 944, 947: "The short answer is that there is no need to refer to the legislative history where the statutory language is clear."
The best evidence of what was intended by any enactment will almost always consist in "the words by which the legislature undertook to give expression to its wishes", United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 543-544, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345. Yet where "the meaning of language is plain" the courts may look to legislative history for further evidence, in order to determine whether "giving the words their natural significance * * * leads to an unreasonable result plainly at variance with the policy of the legislation as a whole" (Chatwin v. United States, 1946, 326 U.S. 455, 464, 66 S.Ct. 233, 90 L.Ed. 198; Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199); or whether a certain word, phrase or clause has been employed with a more limited or otherwise different meaning "than might be attributed to it by common practice." United States v. American Trucking Ass'ns, supra, 310 U.S. at page 545, 60 S.Ct. at page 1064; Boston Sand & Gravel Co. v. United States, 1928, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170; Duplex Printing Press Co. v. Deering, 1921, 254 U.S. 443, 471-477, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; United States v. Fisher, 1805, 2 Cranch, 358, 385-386, 6 U.S. 358, 385-386, 2 L.Ed. 304. And when the literal meaning of the language of a statute is "plainly at variance" with legislative purpose, as manifested by legislative history, the courts will "follow the purpose of the statute rather than the literal words." United States v. Rosenblum Truck Lines, 1942, 315 U.S. 50, 55, 62 S.Ct. 445, 449, 86 L.Ed. 671; United States v. American Trucking Ass'ns, supra, 310 U.S. at page 543, 60 S.Ct. at page 1063; Holy Trinity Church v. United States, 1892, 143 U.S. 457, 463-465, 12 S.Ct. 511, 36 L.Ed. 226.
Turning to the most recent legislative history of the "suspension statute" at bar, Senate Report No. 422, 79th Congress, 1st Session, dealing with the amendatory Act of June 30, 1945, states:
"The bill merely extends for another year the act of October 10, 1942 * * *, which suspended until June 30, 1945, the running of the statute of limitations applicable to violations of the anti-trust laws.
"The act of October 10, 1942, was recommended and requested by the Secretary of War, the Secretary of the Navy, the Attorney General, and approved by the President, because proceedings under the anti-trust laws would seriously interfere with the war effort. Such court investigations, suits, and prosecutions under the anti-trust laws unavoidably consume valuable time of executives and employees of corporations which are engaged in war work. Your committee believe that prosecutions of this matter at this time will be contrary to the national interest and security."
*113 This is typical of the legislative history of the original Act. Sen. Rep. No. 1592, H. R. Rep. No. 2480, 77th Cong. 2nd Sess. (1942). The Congressional reports may fairly be said to deal solely with proceedings by the United States under the anti-trust laws. The manifest purpose of the Act, however, was to free business from the time and energy-consuming requirements of anti-trust litigation, and so advance the war effort. While the legislative history is silent as to the desirability of like inducement to a private party to postpone similarly the litigation of his cause of action arising under the anti-trust laws, this result of a literal reading of the statute obviously would not be "plainly at variance", but would be entirely consistent with and in furtherance of the ultimate purpose of the Act.
Since "Nothing in the legislative history * * * indicates any other purpose in Congress than that expressed by the words of the act", (Browder v. United States, 1941, 312 U.S. 335, 338, 61 S.Ct. 599, 601, 85 L.Ed. 862), the Act is to be interpreted by "giving the words their natural significance". Crooks v. Harrelson, 1930, 282 U.S. 55, 61, 51 S.Ct. 49, 75 L.Ed. 156; Van Camp & Sons Co. v. American Can Co., 1929, 278 U.S. 245, 253-254, 49 S.Ct. 112, 73 L.Ed. 311, 60 A.L.R. 1060; Ozawa v. United States, supra, 260 U.S. 178, at page 194, 43 S.Ct. at page 67. Which is to say that "civil proceedings under any existing statutes" means what it says. See: Kilpatrick v. Texas & Pacific Ry. Co., 337 U.S. 75, 69 S.Ct. 953, 959 (1949).
Indeed, to interpret the Act as excluding "civil proceedings" by private litigants would be in derogation of established policy of the Congress to buttress enforcement of the anti-trust laws by facilitating the prosecution of private litigation in the manner provided in § 5 of the Clayton Act, which declares that:
"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the anti-trust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken.
"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof." 38 Stat. 731, 15 U.S. C.A. § 16. [Some italics added.]
Manifestly, to toll "any existing statute of limitations applicable to * * * civil proceedings" brought by the United States, while permitting limitations to run against private persons, would tend to defeat the very encouragement and assistance to private litigants which the Congress sought to give by § 5 of the Clayton Act.
In opposition to the motions to dismiss, counter-claimants have advanced the two-fold argument that running of the three-year period of limitation specified in § 338(1) of the California Code of Civil Procedure was suspended, not only by the Act of October 10, 1942, 56 Stat. 781, as amended June 30, 1945, 59 Stat. 306, but also by a suit for injunction under § 4 of the Sherman Act, 15 U.S.C.A. § 4, commenced by the United States in the Southern District of New York on July 30, 1938 against all the plaintiffs and third-party defendants in this action except United West Coast Theatres Corp., Fox West Coast Agency Corporation, Charles P. Skouras and Spyros P. Skouras, wherein a consent decree was entered on November 20, 1940, and was later set at large upon motion filed by the Government on August 7, 1944. See: United States v. Paramount Pictures, Inc., et al., 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Id., D.C.S.D. *114 N.Y. 1947, 70 F.Supp. 53; Id., D.C.S.D. N.Y.1946, 66 F.Supp. 323.
Decision that the Act of October 10, 1942, 56 Stat. 781, as amended June 30, 1945, 59 Stat. 306, suspended until June 30, 1946, the running of limitations as to the counterclaim, renders it unnecessary to determine whether United States v. Paramount Pictures, Inc., et al., supra, was "pending" during the effective period of the consent decree, so as to toll the statute of limitations in the case at bar by virtue of § 5 of the Clayton Act, 15 U.S.C.A. § 16. See: Momand v. Universal Film Exchange, D.C. Mass. 1942, 43 F.Supp. 996, 1011-1013.
Since the counterclaim is not barred by limitations, the motions to dismiss are denied.
Counsel for counterclaimants will submit formal order embodying this ruling as provided by local rule 7 within five days.