288

Marc D. LEH, individually, and The Progress Company, a co-partnership comprised of Marc D. Leh and David Brown, co-partners, Appellants,

v.

GENERAL PETROLEUM CORPORATION, a corporation, Standard Oil Company of California, a corporation, Texaco, Inc., a corporation, Richfield Oil Corporation, a corporation, Union Oil Company of California, a corporation, Tidewater Oil Company, a corporation, Appellees.

No. 18333.

United States Court of Appeals Ninth Circuit.

April 2, 1964.

Richard D. Harris, Los Angeles, Cal., for appellants.

Paul E. Bermingham, New York City, J. Arthur Kelly, Howard Painter, Los Angeles, Cal., for appellee General Petroleum Corp.

Francis R. Kirkham, William E. Mussman, Thomas E. Haven and H. Helmut Loring, San Francisco, Cal., for appellee Standard Oil Co. of Cal.

Charles E. Beardsley, Los Angeles, Cal., and George W. Jansen, New York City, for appellee Texaco Inc.

William J. DeMartini, Los Angeles, Cal., for appellee Richfield Oil Corp.

Moses Lasky and Richard Haas, San Francisco, Cal., for appellee Union Oil Co. of Cal.

Edmund D. Buckley and Wayne H. Knight, Los Angeles, Cal., for appellee Tidewater Oil Co.

Before BARNES and JERTBERG, Circuit Judges, and BURKE, District Judge.

BARNES, Circuit Judge.

This is an appeal from a judgment of dismissal below, upon the sole ground the statute of limitations had run against The Progress Company on its cause of action against appellees, filed September 28, 1956. The action was for treble damages under Section 4 of the Clayton Act (15 U.S.C. § 15), arising from the alleged violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2). Jurisdiction below rested on Section 1337 of Title 28 United States Code, and rests here on Sections 1291 and 1294(1) of Title 28 United States Code.

It is conceded by appellants that their cause of action accrued no later than February 1954, and that the applicable statute of limitations began to run at that time. The question before us is *first:* What is the applicable statute of limitations? And, *second:* Whether (if the one year statute Cal.Code Civ.P. § 340(1) is applicable, rather than the three year statute Cal.Code Civ.P. §

338(1)) it was tolled or suspended under § 5 of the Clayton Act (15 U.S.C. § 16, as amended, 15 U.S.C. § 16(b), 1955) by a similar proceeding "instituted by the United States."

The alleged similar proceeding was United States v. Standard Oil Co., et al., Civil No. 11584–C, heretofore pending in the United States District Court for the Southern District of California (the same district from which this case arose, although the cases were assigned to and tried by different judges).

Seven specifications of error raise the above primary questions. They need not here be quoted in full. The appellees likewise raise two separate defenses,[1] which need not here be considered in view of our subsequent primary conclusions.

It is further conceded by both parties that the four year federal limitations period with respect to private causes of action under the antitrust laws is inapplicable to a cause accruing in 1954; and that resort must be had to state law. (Steiner v. 20th Century-Fox Film Corp., 9 Cir. 1956, 232 F.2d 190, 194.[2])

The difficulty with the "solution" of "looking to state laws" is that there the problem starts.[3]

1. "II This Action Cannot Be Maintained Because It Was Not In Fact Filed by the Purported Plaintiff, The Progress Company.
"III The Undisputed Facts Show That The Progress Company Did Not Suffer Any Actionable Damage By Any Act of Appellees."

2. Amici Curiae lodged with the Clerk of this Court after the oral argument herein a motion for leave to file a brief. That motion was denied but the cases the amici parties cited with the motion are here mentioned. Amici differ with the agreed position taken by both parties to this appeal, that resort must be had to state law for the "characterization" of the cause of action created by 15 U.S.C. § 15. Cited are Smith v. Cremins, 9 Cir. 1962, 308 F. 2d 187, and Simler v. Connor, 1963, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691.
The first case involves civil rights (42 U.S.C. § 1983) and the action is upon a liability created by statute, "different from

any which would exist at common law in the absence of statute" (308 F.2d p. 190). But no "penalty or forfeiture" exclusion is involved in Smith v. Cremins, or discussed therein.
Simler v. Connor, supra, involves in a diversity case, in a suit for attorneys' fees, the question whether state or federal law controls as to whether the plaintiff was entitled to a jury trial.
We see no controlling force in either of these opinions with respect to the issues presented in this case.

3. (a) "Since the antitrust laws specify no statute of limitations for private damage actions, courts look to state law. This approach, however, has produced more questions than answers." (The Report of The Attorney General's Committee to Study the Antitrust Laws, p. 381 (1955).)
(b) "In the federal statute of limitations, the allied tolling provisions, and other important provisions in the statutory scheme, there are critical terms and phras-

I

■ This action is one where much can be said on both sides. Where a strong diversity of judicial opinion exists, and we attempt to prognosticate (as all other federal courts must who face the problem) the result at which a state court would arrive, we find many gray areas. Are we to consider what our opinion might be, based on an original solution of the problem, or are we to consider the trial court's conclusion and opinion, and determine only whether it is clearly erroneous? We conclude the latter is the proper measuring stick, and under it, after some soul searching, we affirm the district court. We are reminded of what Judge Wyzanski said so frankly to a jury in a private treble damage antitrust action (Cape Cod Food Products v. National Cranberry Association, D.Mass.1954, 119 F.Supp. 900, 910) speaking of damages, "You can't go to a book and look for the answer."

The California Code of Civil Procedure §§ 335 and 338(1) read as follows (in pertinent part):

"§ 335. The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows * * *

"§ 338. * * *

"Within three years:

"1. An action upon a liability created by statute, other than a penalty or forfeiture."

California Code of Civil Procedure, § 340(1) reads as follows (in pertinent part):

"§ 340. * * *

"Within one year:

"1. Statutory penalty or forfeiture. An action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the State, except when the statute imposing it prescribes a different limitation; * * * *"

Is the action based upon a statutory penalty or forfeiture, or is it an action based upon a liability created by statute other than a penalty or forfeiture? [4]

■ In considering this question, it is our problem, as it was that of the court below, to determine not what we would rule were it a case of first impression before us, but which of said statutes a California court would apply if it had jurisdiction of this case. Hall v. Copco Pacific, Ltd., 9 Cir., 1955, 224 F.2d 884.

Appellants have five prongs to their spear in their attack on the one year penal statute interpretation. We discuss each of appellants' contentions in turn.

(A) Appellants suggest that "at least one California trial court has construed the action as compensatory rather than penal." This decision is unreported, but what purports to be a certified copy of a "Memorandum and Order on Demurrers and Motions to Strike" is attached to

es which require more precise definition than Congress has seen fit to provide. The courts have attempted to provide the needed definitions, but these judicial elaborations are as often confusing and contradictory as they are helpful." (Wiprud, G. W., "Antitrust Treble Damage Suits Against Electrical Manufacturers: The Statute of Limitations and Other Hurdles." 57 Northwestern Univ.L.Rev. 29 (1962).

4. This court has stated in so many words, "An action to recover damages resulting from a violation of the Sherman Anti-Trust Act is not an action to recover a

penalty." Hicks v. Bekins Moving and Storage Co., 9 Cir. 1937, 87 F.2d 583, relying solely on Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241. Chattanooga is mentioned later, in the quotation of Judge Mathes' opinion below. The only two cases cited in Chattanooga to support the court's conclusion are: Huntington v. Attrill, 1892, 146 U.S. 657, 658, 13 S.Ct. 224, 36 L.Ed. 1123, and Brady v. Daly, 1899, 175 U.S. 148, 155, 156, 20 S.Ct. 62, 44 L.Ed. 109. These are also cited in Judge Mathes' memorandum decision. And see note 7, infra.

appellants' opening brief as an appendix. It is from the Superior Court of the State of California in and for the County of Fresno, No. 97179, and is entitled "Charles S. Ehrhorn, d.b.a. Navy Gas Co., Plaintiff, vs. Caminol Company, et al, Defendants."

The trial judge in Ehrhorn v. Caminol Co., supra, first sustains certain general and special demurrers, and grants leave to amend. He likewise states: "The Court is of the opinion that the three year statute of limitations applies." This is a state action based on the Cartwright Act, a state antitrust statute. No reasons are given for the holding; and no authority is cited. We do not know what the precise issue was, raised by the pleadings then before the trial judge, or whether he was merely delivering "an advisory opinion" to aid counsel for plaintiffs therein in drafting his required new complaint. We think it of some, but little, precedential value.

We adopt in this connection a portion of appellees' argument, appearing in their opening brief:

"[A] decision of the Superior Court at an intermediate stage of the case is binding on no one, Stevens v. Key-Resistor Corp. (1960) 186 C.A.2d 325, 8 Cal.Rptr. 908; Carley v. City of Santa Rosa (1957) 154 C.A.2d 214, 315 P.2d 905; Curnutt v. Holk (1962) 203 A.C.A. 6 [203 C.A.2d 6, 21 Cal.Rptr. 224]; Phillips v. Phillips (1953) 41 Cal.2d 869, 874, 264 P.2d 926; Grable v. Citizens Nat. Trust & Sav. Bank (1958) 164 C.A. 2d 710, 331 P.2d 103, and even a final decision is not binding on any other superior court. People v. Cowles (1956) 142 C.A.2d [Supp.] 865, 298 P.2d 732; see generally Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455–456 [20 Cal.Rptr. 321] 369 P.2d 937. Superior Court opinions are rarely reported in California and there is no digest of points decided in such opinions. It is precisely for this reason that King v. Order of [United Commercial] Travelers (1948) 333 U.S. 153, 161–

162 [68 S.Ct. 488, 92 L.Ed. 608], held that state trial court decisions need not be regarded by federal courts in diversity actions as declaratory of state law. Otherwise a plaintiff might secure a fortuitous victory in a federal court by virtue of an authority that would not be recognized in the state courts and might be contrary to many other such unreported cases.

"Upon the basis of its own thorough knowledge of the nature of California Superior Courts, this Court in State of California [Dept. of Employment] v. Fred S. Renauld & Co., 179 F.2d 605 (9 Cir. 1950) with careful analysis rejected an argument that a decision of a Superior Court is binding on the United States Court of Appeals, saying (179 F.2d at 609):

'federal courts are bound (a) when the supreme judicial tribunal of the state has decided a given question, or (b) a state appellate court which is in the line of the state appellate structure leading up to the supreme tribunal of the state has decided it, or (c) a *goodly number of the trial courts of the state generally and for a considerable period of time have adhered to a common interpretation of the point.* Neither of the cited California decisions is binding on any other court of the state excepting only that the Superior Court Appellate Department decisions may be said to be binding on other Municipal Courts of the county in which the decision was had.

'It is our opinion that neither of the California cases cited falls within either of the categories mentioned and neither, nor both of them together, bind the federal court.'" (Emphasis appellees'.)

In Reid v. Doubleday & Co., N.D.Ohio 1952, 109 F.Supp. 354, Judge Kloeb, a trial judge experienced in antitrust litigation, held that treble damages awarded under the Robinson-Patman Act were re-

medial rather than penal, and in doing so, considered whether a federal court, in determining what state law is or is to be, and eliminating "other persuasive evidence," must follow (a) the Supreme Court of that state; (b) an intermediate appellate court; (c) lower state courts of original jurisdiction. He stated the answers are to (a) "Yes." Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; to (b) "Yes." King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608; Six Companies of Cal. v. Joint Highway District, 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114, reh. den. 311 U.S. 730, 61 S.Ct. 438, 85 L.Ed. 475; Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109, reh. den. 311 U.S. 730, 61 S.Ct. 438, 85 L.Ed. 475; to (c) "Yes and no." King v. Order of United Commercial Travelers of America, supra, 333 U.S. at 159, 68 S.Ct. at 491, 92 L.Ed. 608. The federal courts, he concludes, may or may not follow the lower state courts, as they think proper.

In deciding the matter, Judge Kloeb relied on many of the cases later cited and discussed herein (109 F.Supp. p. 363).

(B) Turning to the cases which appellants list as recognizing the three year statute, we find the following listed: Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 1948, 170 F.2d 569, 578, cert. den. 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086, reh. den. 336 U.S. 955, 69 S.Ct. 878, 93 L.Ed. 1109; Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir. 1950, 185 F.2d 196, 207; cert. den. 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680, reh. den. 341 U.S. 912, 71 S.Ct. 620, 95 L.Ed. 1349; Steiner v. 20th Century-Fox Film Corp. supra. (In the last two cases cited the authority is dimmed somewhat by the fact the parties agreed that the three year statute applied.) Four district court decisions are then

listed—two each from Northern and Southern California: Aero Sales Co. v. Columbia Steel Co., N.D.Cal.1954, 119 F.Supp. 693; Manny v. Warner Bros. Pictures, S.D.Cal.1953, 116 F.Supp. 807; Levy v. Paramount Pictures, N.D.Cal. 1952, 104 F.Supp. 787; United West Coast Theatres Corp. v. South Side Theatres, S.D.Cal. 1949, 86 F.Supp. 109.

In the Burnham Chemical Co. case, supra, a reading indicates that this court stated (170 F.2d at p. 578): "The [trial] court *therefore* properly held the cause barred by Section 338(1) of the California statute of limitations." (Emphasis added.) The "therefore" refers to the fact that "the only damages for which a recovery might be had (under federal antitrust laws) are those which accrued and were suffered „within three years prior to the filing of the complaint and the record reveals that none were shown during this period." Obviously if no damages could be shown during a three year period immediately prior to the filing of the complaint, none could be shown during the one year period prior to the filing of the complaint; hence no choice between the two periods was offered the court, nor any choice between the two periods necessary or required.

Thus a reading of Burnham, supra, Suckow Borax Mines, supra, and Steiner v. 20th Century-Fox, supra, indicates that in none of these has the precise issue here present been met. In the first it was not necessary because of the facts; in the last two, the three year statute was agreed upon by the parties as applicable.[5]

In Aero Sales Co. v. Columbia Steel Co., N.D.Cal.1954, 119 F.Supp. 693, Judge Harris held that Judge Goodman, in Wolfe v. National Lead Co.,[6] had already decided the question that the treble damage provision of the Clayton Act was not penal, hence the three year statute prevailed, and that Judge Harris concurred despite "persuasive arguments"

---

5. 185 F.2d at 207 and 232 F.2d at 194, respectively.

6. No. 29500, unreported, in the District Court for the Northern District of California.

in favor of the one year penalty theory. Judge Harris also referred to the United West Coast Theatres (supra) opinion which was written by Judge Mathes (the same judge who came to the opposite conclusion in our instant case). Judge Harris discussed and differentiated Ben C. Jones & Co. v. West Publishing Co., 5 Cir. 1921, 270 F. 563, dismissed, 270 U.S. 665, 46 S.Ct. 208, 70 L.Ed. 789, upon two grounds—(1) it had not been followed, either in the courts of Texas nor in the federal courts sitting in that state, and (2) that in the Jones case, the four year statute was an effective bar, without a consideration or discussion as to whether the two year Texas statute prevailed, as the action was barred by either statute of limitations.

In Manny v. Warner Bros., supra, Judge Westover specifically noted:

"[I]t is immaterial whether the plea of the statute of limitations is under the provisions of subdivision 1 of § 340 or subdivision 1 of § 338 of the Code of Civil Procedure of the State of California. If the contention of moving defendants is correct * * then the cause of action is barred by both sections." (116 F.Supp. at 808–809.)

In Levy v. Paramount Pictures, supra, Judge Carter assumed the three year statute applied, without the necessity of determining whether the one year statute was applicable.

In United West Coast Theatres Corp. v. South Side Theatres, supra, Judge Mathes, after reciting that the California courts had not decided the point (86 F.Supp. at 110), ruled:

"* * * the nature of the remedies accorded a private person * * would seem to mark the liability as one 'created by statute, other than a penalty or forfeiture.' * * * " (the language used in § 338(1))

Judge Mathes then cites Fleitmann v. Welsbach Street Lighting Co., 1916, 240 U.S. 27, 29, 36 S.Ct. 233, 60 L.Ed. 505; United Copper Securities Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119, and relies upon Burnham Chemical, supra, already discussed as a ninth circuit case supporting his position, and refers to Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir. 1936, 85 F.2d 742, 751–753, cert. den. 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452; Culver v. Bell & Loffland, 9 Cir. 1944, 146 F.2d 29, 31, and states:

"[T]his action having been commenced more than six years * * * thereafter * * * [each claim for damages had accrued] the counterclaim is long barred by § 338(1) of the California Code of Civil Procedure, unless * * * tolled."

In reversing his position in his reexamination of the problem in this case, Judge Mathes gave it careful study. He states in his memorandum of decision filed August 30, 1962 (to be considered as his Findings and Conclusions, 208 F. Supp. at 291):

"The correct method whereby to determine which State statute of limitations is properly applicable to a cause arising under the antitrust laws prior to the Federal limitations statute has been the subject of some judicial disagreement. One view is that, inasmuch as the private antitrust action involves a Federal cause of action, whatever State limitations period is to be applied turns upon the Federal court's view as to the nature of the Federal action, as being either 'remedial' or 'penal'. [Cf.: Fulton v. Loew's Inc., 114 F. Supp. 676, 682 (D.Kan.1953); Christensen v. Paramount Pictures, 95 F.Supp. 446, 449 (D.Utah 1950); see also Momand v. Universal Film Exchange, 43 F.Supp. 996, 1008–1009 (D.Mass.1942).] And since the Court concluded in the Chattanooga Foundry case, supra, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241,[7]

7. Concerning Chattanooga, supra, the second circuit distinguished it in these words:

"Considered in the light of these principles, the Supreme Court's decision

that actions for treble damages under the Federal antitrust laws are not subject to the general Federal statute of limitations governing actions to recover a 'penalty' under the laws of the United States [28 U.S.C. § 791, as amended, id. § 2462 (1948)], it has been reasoned that a State limitations statute dealing with recovery of 'penalties' in the State courts cannot in any event be applied to treble-damage claims grounded upon Federal antitrust violations. [See: Greene v. Lam Amusement Co., 145 F.Supp. 346, 348 (N.D.Ga.1956); Wolf Sales Co. v. Rudolph Wurlitzer Co., 105 F.Supp. 506, 509 (D.Colo.1952).]

"The majority view, however, as formulated in recent years, holds that the question of limitations applicable to private antitrust actions was, as Mr. Justice Holmes put it, 'left to the local law by the silence of the Statutes of the United States'. [Chattanooga Foundry & Pipe Works v. Atlanta, supra, 203 U.S. at 397, 27 S.Ct. 65.] Moreover, the word 'penalty', as applied in a Federal statute such as 28 U.S.C. § 2462, obviously may have 'a different meaning than the same word in the * * * [State] statute'. [Bertha Building Corp. v. National Theatres Corp., 269 F.2d 785, 788 (2d Cir. 1959), cert. denied, 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960).] Accordingly, in keeping with the principle that statutory construction by a State's highest court is deemed an integral part of the text of the State's statute of limitations, it has been declared that Federal courts 'must accept the statutes as construed and interpreted by the * * * [State] courts. It is for them to determine what is meant by the word "penalty" in the * * * [State] statute'. [Bertha Building Corp. v. National Theatres Corp., supra, 269 F.2d 785, 788, (2d Cir. 1959), cert. denied, 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960); cf.: Moore v. Illinois Central R. Co., 312 U.S. 630, 634, 61 S.Ct. 754, 85 L.Ed. 1089 (1941); Costello v. Bank of America, 246 F.2d 807, 812 (9th Cir. 1957).]

"Adherence to the rationale just stated has required the Federal courts to compare the nature of the Federal treble-damage antitrust action with that of analogous State causes, as construed by the courts of the particular State involved, and from such a comparison to decide which local statute of limitations the courts of the State would deem applicable to actions embracing Federal treble-damage antitrust claims. [See: North Carolina Theatres, Inc. v. Thompson, 277 F.2d 673 (4th Cir. 1960); Powell v. St. Louis Dairy Co., 276 F.2d 464 (8th Cir. 1960); Bertha Building Corp. v. National Theatres Corp., supra, 269 F.2d 785;

---

in Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 66, 51 L.Ed. 241, is not decisive of this case. There the Supreme Court held that an action for treble damages under the anti-trust laws was not an action for a penalty within the meaning of the federal statute of limitations for penal suits [note]. But the word 'penalty' in a federal statute has a different meaning than the same word in the New York statute. The federal statute of limitations for penal actions applies only to actions on behalf of the United States and *qui tam* actions. Huntington v. Attrill, 146 U.S. 657, 668, 673, 13 S.Ct. 224, 36 L.Ed. 1123.

The New York three year statute by its express terms applies to actions 'by the person aggrieved' and thus, unlike the federal statute, applies to private actions. Huntington v. Attrill, supra, 146 U.S. 677–678, 13 S.Ct. 231." (Bertha Building Corp. v. National Theatres Corp., 2 Cir., 269 F.2d 785, at 788–789, cert. den. 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960)).
And cf. Englander Motors, Inc. v. Ford Motor Co., 6 Cir. 1961, 293 F.2d 802; Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., N.D.Ala.1960, 197 F. Supp. 333, affirmed, 5 Cir. 1961, 295 F. 2d 362.

Gordon v. Loew's Inc., 247 F.2d 451 (3rd Cir. 1957); Green v. Wilkinson, 234 F.2d 120 (5th Cir. 1956); Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 191 F.2d 912 (7th Cir. 1951), cert. denied, 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704 (1952); Leonia Amusement Corp. v. Loew's Inc., 117 F.Supp. 747 (S.D. N.Y.1953); and see: Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Englander Motors, Inc. v. Ford Motor Co., 293 F.2d 802, 806 (6th Cir. 1961); Momand v. Universal Film Exchanges, 172 F.2d 37, 47 (1st Cir. 1948), cert. denied, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1949); United Banana Co. v. United Fruit Co., 172 F.Supp. 580, 585 (D.Conn. 1959); compare: Brady v. Daly, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109 (1899); Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892).]

"A study of the decisions convinces me that the precedent of seeking guidance from the construction given a particular limitations statute by State courts is a sound one to follow in the case at bar, notwithstanding the inherent difficulty of diverse judicial interpretations in the various States as to the essential nature of private multiple-damage actions. [See: North Carolina Theatres, Inc. v. Thompson, supra, 277 F.2d 673; Bertha Building Corp. v. National Theatres Corp., supra, 269 F.2d 785; Englander Motors, Inc. v. Ford Motor Co., 186 F.Supp. 82, 90 (N.D.Ohio 1960), modified on other grounds, 293 F.2d 802 (6th Cir. 1961).]

"Turning, then, to the scope of the three-year [Cal.C.C.P. § 338(1)] and the one-year [Cal.C.C.P. § 340(1)] statutes in question here, as construed by the State courts, it is noted that although the California courts have not as yet interpreted for limitations purposes a similar private-action provision under the State's antitrust law [see Cal.Bus. & Prof.C. § 16750, as amended, id. § 16750(a) (1959)], they have considered the applicability of both § 338(1) and § 340(1) on several occasions in cases involving circumstances closely analogous to those presented at bar. For example, a statutory provision for recovery of twice the amount paid to a decedent in excess of legally-incurred payments under the State Old Age Security Law has been characterized as 'penal', and hence the one-year period of limitation specified in § 340(1) was held applicable. [Department of Social Welfare v. Stauffer, 56 Cal.App.2d 699, 133 P.2d 692 (1943).]

"The same result was reached where 'liquidated damages' were imposed by statute for failure of gas and electric companies to supply requisite power [Hansen v. Vallejo Electric Light & Power Co., 182 Cal. 492, 188 P. 999 (1920); compare Los Angeles County v. Ballerino, 99 Cal. 593, 32 P. 581, 34 P. 329 (1893]; where court reporter fees were reduced for failure to comply with court rules [County of San Diego v. Milotz, 46 Cal.2d 761, 300 P.2d 1 (1956)]; and where a buyer sued for return of the amount paid under a conditional sale contract upon the seller's interference with payment of the balance of the debt prior to maturity [Stone v. James, 142 Cal.App.2d 738, 299 P.2d 305 (1956)].

"The California courts have also characterized as 'penal' a statutory provision for double damages in trespass actions involving timber [Helm v. Bollman, 176 Cal.App.2d 838, 1 Cal.Rptr. 723 (1959); cf. Swall v. Anderson, 60 Cal.App.2d 825, 141 P.2d 912 (1943)]; likewise a statutory provision for treble damages in actions for unlawful detainer [see: Hoban v. Ryan, 130 Cal. 96, 62 P. 296 (1900); Gwinn v. Goldman, 57 Cal.App.2d 393, 134 P.2d 915 (1943)], as well as for

damages to adjacent property caused by fire [Clark v. San Francisco & S. J. Val. Ry. Co., 142 Cal. 614, 76 P. 507 (1904); see also Esposti v. Rivers Bros., 207 Cal. 570, 279 P. 423 (1929)].

"While there has been no such concurrence of views as to the proper characterization of Federal treble-damage antitrust actions [see: Schiffman Bros. v. Texas Co., 196 F. 2d 695, 697 (7th Cir. 1952); Leonia Amusement Corp. v. Loew's Inc., supra, 117 F.Supp. at 756; and see Loevinger, Private Action—The Strongest Pillar of Antitrust, 3 Antitrust Bull. 167 (1958)], it is reasonable to characterize such actions as compensatory in part, and as exemplary or penal with respect to the trebling of damages to business or property resulting from antitrust violations [see Lyons v. Westinghouse Electric Corp., 222 F.2d 184, 189 (2nd Cir.), cert. denied, 350 U.S. 825, 76 S.Ct. 52, 100 L. Ed. 737 (1955); cf. Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358, 365 (9th Cir. 1955)].

"Moreover, the California Supreme Court has characterized as a penalty 'any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him for a legal damage done him by the former'. [Miller v. Municipal Court, 22 Cal.2d 818, 837, 142 P.2d 297, 308 (1943); see also Grossblatt v. Wright, 108 Cal.App.2d 475, 239 P.2d 19 (1951).]

"The conclusion is thus impelled that § 340(1) of the California Code of Civil Procedure, as construed by the California courts, is applicable to treble-damage causes under the Federal antitrust laws which accrued prior to the effective date of the four-year Federal limitations period. [15 U.S.C.A. § 15b.] Inasmuch as plaintiffs' cause of action admittedly accrued in February of 1954, and this action was not commenced until September of 1956, ap-

plication of the one-year period specified in § 340(1) would clearly raise the time bar upon which defendants rely for summary judgment of dismissal. * * * "

The trial judge then turned to the ninth circuit cases hereinbefore mentioned, and the previous district court decisions from this circuit, supra, and concluded:

"Treating the question as *res integra*, as I now deem it to be, and having due regard for State-court interpretation of the content of the provisions of both § 338(1) and § 340(1), I must hold that the one-year period specified in Cal.C.C.P. § 340(1) is the California statute of limitations properly applicable to Federal treble-damage antitrust causes accruing prior to the effective date of the Federal four-year statute. [15 U.S.C.A. § 15b.]"

■ We have examined the cases cited in the trial court's memorandum, and we believe they, and his reasoning based thereon, carry conviction. Cf.: Isom v. Rex Crude Oil Co., 140 Cal. 678, 680, 74 P. 294 (1903) and Penziner v. West American Finance Co., 10 Cal.2d 160, 170, 74 P.2d 252 (1937), and our brief discussion of the penalty theory lying behind treble recovery in antitrust litigation in Flintkote Co. v. Lysfjord, 1957, 9 Cir., 246 F.2d 368, 398, cert. denied, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46.

While appellees cite cases from six other state jurisdictions supporting their position, we do not feel that the manner in which other state courts interpret their particular statutes would foretell what the California courts might do, absent an almost unanimous rule in other states. Such unanimity of opinion in other states does not exist. We agree with appellants (Reply Brief, p. 6):

"Everyone concedes that the problem is how a California court would characterize this action under the language of the two specific California statutes. If that is the problem, of what assistance is it to know

how a New Jersey Court characterized a private antitrust action under different language in different statutes as interpretated (sic) by different decisions."

We realize that Judge Murphy in McLean v. Paramount Pictures, Inc., No. 30262 (in proceedings had on January 10, 1958), held the three year statute applicable, stating:

"[T]he Ninth Circuit has never squarely passed upon this issue. However, for almost ten years now the Ninth Circuit has assumed that the three year period of Section 338(1) is the applicable statute."[8]

He cited the cases we have discussed above, his former opinion in Samuel Goldwyn Productions, Inc. v. Fox West Coast Theatres Corp., N.D.Cal.1956, 146 F.Supp. 905, and Christensen v. Paramount Pictures, D.Utah 1950, 95 F.Supp. 446, 449.

In Goldwyn, it was said:

"The applicability of the three year statute of limitations of Cal.Code of Civil Procedure, § 338(1) * * * to this proceeding is not in issue on this motion, and may be assumed for the purposes of this motion [involving its tolling] to be undisputed." (146 F.Supp. at 906.)

In Christensen, supra, Judge Ritter said:

"On the other hand, counsel for plaintiff contend that the Utah statute of limitations for 'An action upon a statute for a penalty or forfeiture where the action is given to an individual * * *.' does not apply to actions for treble damages under the Sherman and Clayton Anti-Trust Acts.

"It is my judgment that the Utah statute of limitations, when it speaks of an action upon a statute for 'a penalty or forfeiture where the action is given to an individual, or to an individual and the state,' refers to actions to enforce the criminal law, in the nature of the well known informers actions. The language of this statute is not modern. It has been in the Anglo-American statutory law for a long time and I very seriously doubt that the legislative history of this provision would justify its application to suits for treble damages under the Sherman Anti-Trust and Clayton Acts." (95 F.Supp. at 449.)[9]

(C) Appellants also make limited reference to the 1914 Congressional Record; and the 1950 Congressional Record listing of the State of California as having a three year statute (96 Cong.Rec. 10439–41 (1950)).

We note that Senator Hoar, the author (or at least the person in charge of the bill in the Senate) referred to the three-fold damage provision as "establishing a *penalty * * * purely penal and punitive*." (Emphasis added. 21 Cong. Rec. 3146–47 (1890).)

(D) Heavy emphasis is placed by appellants on a law review article authored by Professor Lawrence Vold, appearing in 28 Ky.L.J. 117, particularly 152–159 (1940), entitled: "Are Threefold Damages Under the Anti-Trust Act Penal or Compensatory?" Starting with II Samuel (Chapter 12, Verses 1–6), he represents that the criminal punishment (death) therein decreed was alone "penal," that the "lamb restored fourfold" was "reparation" to the injured party, and nothing more. We agree with

---

8. This is copied from Reporter's Transcript of Pre-Trial Hearing in Chambers, held January 10, 1958, in "Daniel O. McLean, et al. v. Paramount Pictures, Inc., et al.," United States District Court (No. 30,-262) for the Northern District of California, Southern Division, pp. 25–26.

9. There then appears note 8 in the Christensen case, referring to Huntington v.

Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L. Ed. 1123 (vide post) and the reference therein to Lord Watson's statements (vis-a-vis those of Master of the Rolls Lindley in Shelton Elec. Co. v. Victor Talking Machine Co., D.C.N.J.1922, 277 F. 433, 435–436) giving the legislative history of the English statute of limitations.

Professor Vold when he states "the available terminology relating to damages and penalties is very slippery language." He buttresses his argument by suggesting that the "defendant" both in the Bible and in antitrust litigation is a "rich and powerful wrongdoer," while the plaintiff is "a very poor man, who has but his own little business to which he devotes his life" (p. 120), that there are "intangible elements to which no definite measure in pecuniary loss can readily be applied" (p. 124)—these he groups and describes as "accumulative harm" (p. 125). Professor Vold disagrees, for example, with Judge Runyon in his opinion in Haskell v. Perkins, D.C.N.J.1928, 28 F.2d 222, reversed on other grounds, 31 F.2d 53, wherein that court stated (with considerable logic):

> "[B]ut if, on the other hand, the damages as awarded by the jury constitute in their entirety everything that is compensatory, then the trebling of the damages and the [additional] attorney's fee would appear to lie entirely outside the scope of compensation * * *."

"Consequently," says Professor Vold,

> "the reasoning [of Judge Runyon] utterly ignores the element of liquidating compensation for accumulative actual harm in the intangible elements involved when a going business is destroyed in violation of the anti-trust act. The opinion thus merely blindly assumes that the threefold damage provision is merely punitive." (p. 151)

Judge Runyon's conclusion appears to us to be correct, unless we assume that "unprovable" compensation in excess of full provable compensation can be something other than punitive damages. If it cannot be compensation, and cannot be punitive, then what is it? Because "accumulative harm" is difficult or impossible of proof, says the Professor, some or all of whatever damages are awarded beyond provable compensation must be classified as compensatory damages and not penal. We think one purpose of a "penalty" in the antitrust statutes is to award damages for losses that are either difficult of proof, or cannot be precisely ascertained (and hence are incapable of proof as compensatory damages), as well as to discourage the anticompetitive activities which gave rise to the antitrust cause of action. But no matter the reason, the amount awarded over and above compensation is to penalize—to do more than compensate.

This does not mean we need disagree with Professor Vold that "the threefold damage provision as used in the federal anti-trust act is not a provision for a penalty, *using that term in the strict sense of a payment exacted and collected by the state as a punishment by way of example to deter other evildoers.*" (P. 158; emphasis added.)[10] Punishment and deterring effect is certainly part of its purpose, but it may well have a second purpose; that of awarding damages beyond those compensable damages capable of proof.

The provisions of the statute giving the wronged individual the right to sue prevent the word "penalty" from being defined in such a strict sense as the law review article states. The statute is, as has been said, *"sui generis."* Imperial Film Exch. v. General Film Co., S.D. N.Y.1915, 244 F. 985, 987. Congress theorized that a useful social purpose could be accomplished if private individuals or companies can and will aid their government in enforcing anti-trust laws. To do this they require encouragement that the private litigant may recover *more* than his or its actual compensatory damages.[11] What is recovered under

10. "An analysis of the statutory provisions upon which the plaintiffs sue [15 U.S.C. § 15], clearly indicates that the actual loss sustained by plaintiffs is only a base upon which the sanction of treble damages is superimposed. Thus, the fundamentally penal character of the right of action is evident." Banana Distributors, Inc. v. United Fruit Co., S.D.N.Y.1957, 158 F.Supp. 160 at 163.

11. See Note, 75 Harvard Law Review 627 (1962).

Section 7 of the Sherman Act (15 U.S.C. § 15 note) is no less a penalty on the wrongdoer than is the fine and imprisonment with which the sovereign can threaten the violator under Sections 1 and 2, or the forfeiture of articles transported in commerce, as provided for in Section 6. (15 U.S.C. § 6.) The treble damage provision cannot be classified as exemplary damages, in the ordinary legal sense of that phrase, for in antitrust the jury has no authority or discretion to decline to award, or as to how much to award, once the compensatory amount of damages is determined. But we insist it has some attributes of a penal statute.

We conclude Professor Vold suggests an interesting legal theory i. e., that the courts should recognize that antitrust treble damages awards are made up of two sums, one compensatory for actual damage, and the second compensatory for accumulative intangible unprovable harm, requiring recognition that the total of the treble damages awarded was compensatory, and not penal. But we think this emphasizes but one of the peculiar reasons underlying the adoption of our antitrust laws, and is not the sole reason underlying the provision for treble damages. Such special, select (and perhaps deserved) interpretation must, in our opinion, await legislative action, rather than be created by judicial enactment.

(E) Finally, appellants cite federal cases from other jurisdictions where the courts have allegedly "impliedly agreed" that the private antitrust action is compensatory or remedial, rather than penal in nature; citing: Bertha Building Corp. v. National Theatres, Corp., 2 Cir. 1959, 269 F.2d 785, 789, cert. denied 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542; Fulton v. Loew's, Inc., D.Kan.1953, 114 F.Supp. 676, 680; Christensen v. Paramount Pictures, D.Utah 1950, 95 F.Supp. 446.

In Bertha Building Corp. v. National Theatres, Corp., supra, the court of appeals, Judge Swan writing the opinion, considered the general rules hereinbefore enunciated, and pointed out that Judge Ryan, of the District Court for the Southern District of New York, had held the six year New York statute (§ 48, Subdivision 2, New York Civil Practice Act) applicable; not the three year (§ 49, Subdivision 3 of the New York Civil Practice Act); for the latter was not applicable "to private suits for damages which are exemplary in part but not wholly unrelated to actual loss." (269 F.2d at 789.) (This was a reference to the opinion in Leonia Amusement Corp. v. Loew's Inc., supra, 117 F.Supp. at 752.)

Four years later in Banana Distributors, Inc. v. United Fruit Co., S.D.N.Y. 1957, 158 F.Supp. 160, Judge Levet concluded the shorter three year New York statute should be applied to an action upon a statute for a penalty or forfeiture.[12]

Judge Swan held, in Bertha Building, supra, the New York rule to be that a treble damage action in that state is not an action on a penalty statute—agreeing with Judge Ryan largely based on the persuasive New York Court of Appeals decision by Judge Desmond in Sicolo v. Prudential Savings Bank of Brooklyn, 1959, 5 N.Y.2d 254, 184 N.Y.S.2d 100, 157 N.E.2d 284. In that case a fireman sued for damages sustained by him in fighting a fire in defendant's bank building after defendant violated a safety law. "That statute provides in substance that the injured fireman was entitled to recover his actual damages, but in no event less than $1,000, regardless of actual loss." (269 F.2d at 789.) The

12. Judge Levet cites and quotes from Karseal Corp. v. Richfield Oil Corp., 9 Cir. 1955, 221 F.2d 358, 365. Fanchon & Marco v. Paramount Pictures, Inc., S.D. Cal.1951, 100 F.Supp. 84, 88, affirmed 9 Cir., 215 F.2d 167, cert. den. 345 U.S. 964, 73 S.Ct. 950, 97 L.Ed. 1383; United States v. Standard Ultramarine & Color Co., S.D.N.Y.1955, 137 F.Supp. 167; American Banana Co. v. United Fruit Co., S.D.N.Y.1907, 153 F. 943, and many other cases.

New York state court ruled the longer statute of limitations was applicable—because it was a liability created by statute, not a penalty or forfeiture.

In Fulton v. Loew's, Inc., supra, 114 F. Supp. at 680, the court did, as appellees correctly state, take the "federal" approach—i. e., held that the federal rule as to whether the antitrust laws provided a remedial and compensatory recovery, or a penal recovery, should control over a doubtful state law.

Appellees urge and appellants concede (Opening Brief, pp. 4, 13, 22) that no such easy solution is permissible here.

In Christensen v. Paramount Pictures, supra, the judge decided the issue largely on the fact "the question has been decided by a federal district court in California and by the 9th Circuit." (Cf.: n. 9 thereof, citing United West Coast Theatres, supra, and Burnham Chemical v. Borax Consolidated, supra.)

In Lyons v. Westinghouse Electric Corp., 2 Cir. 1955, 222 F.2d 184, cert. denied 350 U.S. 825, 76 S.Ct. 52, 100 L. Ed. 737, Judge Learned Hand wrote, in an action for private triple damages under the antitrust laws, "The remedy provided is not solely civil; two thirds of the recovery is not remedial and inevitably presupposes a punitive purpose. It is like a qui tam action, except that the plaintiff keeps all the penalty, instead of sharing it with the sovereign." (Id. 222 F.2d at 189.) And see Judge Pope's approval of such language, for this court, in Mach-Tronics, Inc. v. Zirpoli, (9 Cir. 1963), 316 F.2d 820, 831–832.

Judge Levet pointed out in Banana Distributors, Inc. v. United Fruit, supra, that Judge Cardozo, while on the state court, in Cox v. Lykes Bros., 1924, 237 N.Y. 376, 143 N.E. 226 at 227–228, had stated:

"We are to remember that the same provision may be penal as to the offender and remedial as to the sufferer Huntington v. Attrill, 146

U.S. 657, 667, 13 S.Ct. 224, 36 L.Ed. 1123 · * * *. The nature of the problem will determine whether we are to take one viewpoint or the other."

We have considered the great emphasis placed by appellants on two California cases, interpreting the State Cartwright Act: Milton v. Hudson Sales Corp., 1957, 152 Cal.App.2d 418, 440, 313 P.2d 936, and Rolley, Inc. v. Merle Norman Cosmetics, Inc., 1954, 129 Cal.App. 2d 844, 849, 278 P.2d 63, 282 P.2d 991. The force of these exclusive dealing cases, say appellants, is that by them we are "simply referred back to the Federal cases." (Reply B., p. 5.) Rolley does that in determining the issue of a non-monopolistic refusal to sell, because it says both the Cartwright Act (California Bus. & Prof.Code § 16600ff) and the Sherman Act, are basically restatements of common law, although the same reasoning does not apply to the Clayton Act. Milton v. Hudson Sales Corp., supra, holds: "There is little doubt that cases decided under the Sherman Act * * * and the common law policy against restraint of trade are applicable to problems arising under the Cartwright Act." (Id. 152 Cal.App.2d at 440, 313 P.2d at 950). But neither pass upon, nor approach, the statute of limitations queston here involved, nor decide whether treble damage provisions (or, under state law Bus. & Prof.Code, § 16750, double damage provisions) are penal or remedial.

In the Loevinger article [13] quoted in Judge Mathes' decision below, there is a reference in a concluding note to an article in Northwestern University Law Review, written by a practicing lawyer who has achieved noteworthy success in the prosecution of private antitrust actions.[14] In this article, criticism is made of "The Report of the Attorney General's Committee to Study the Antitrust Laws (1955)." The author refers to

13. Loevinger, L., "Private Action—The Strongest Pillar of Antitrust," 3 Antitrust Bull. 167 (1958).

14. McConnell, Thos. C., "The Treble Damage Issue: A Strong Dissent," 50 Northwestern University L.Rev. 342 (1955).

page 379 of the report, where it is stated:

> "On balance, we favor vesting in the trial judge discretion to impose double or treble damages. *In all instances,* this would *recompense* injured parties. *Beyond compensation,* the trial court could then *penalize* the purposeful violator without imposing the harsh *penalty* of multiple damages on innocent actors." (Emphasis added.)

We are not here concerned with whether treble damages should or should not be permitted in private antitrust actions. Congress has decided they should be. We quote this portion of the report, and note the criticism thereof, not to prove or disprove the thesis it postulates, but to indicate the common acceptance among knowledgeable specialists in antitrust law of a belief that the trebling of damage constitutes a penal statue, and is more than remedial in nature.

The holding made by Judge Mathes, reversing his previous holdings, cannot, we firmly believe, be held clearly erroneous, and we affirm.

## II

▮ Nor do we think the trial court erred in holding the statute of limitations was not tolled during the pendency of the action entitled United States v. Standard Oil Co. of California, Civil No. 11584-C.

From Steiner v. 20th Century-Fox Film Corp., supra, this court has already held:

(a) The general rules of collateral estoppel apply. "The tolling provision cannot be extended to matters which *might*

have been but were not complained of by the United States." (232 F.2d at 196.)

(b) What is contained in the two suits is determined by a comparison of the two complaints.

(c) "[T]he matters complained of in the private proceeding must be the same acts to achieve the same conspiracy complained of in the action brought by the United States. * * * The same means must be used to achieve the same objectives of the same conspiracies by the same defendants. * * * " [15] There must be "substantial identity of subject matter." [16]

None of these tests are met. (Compare Tr. pp. 2 to 24 and Tr. pp. 1136 to 1158.) For example, the defendants in the government suit were seven integrated oil companies and the Conservation Committee of California Oil Producers. Neither Shell Oil Company nor the Committee were involved in the instant action. As a second example, the conspiracy in the instant case allegedly started in 1948 and continued into 1954. In the government case, the alleged conspiracy commenced in 1936 and was concerned exclusively with events taking place prior to May of 1950. Thus, there were not only different overt acts charged, but different conspiracies, occurring at different times, between different parties.

## III

We conclude appellants' action is barred by the statute of limitations; that it was not tolled; and that the judgment below so holding was not clearly erroneous, and is affirmed.

We do not reach the two additional points raised by appellees.

---

15. 232 F.2d at 196. In this respect, the Steiner case and this circuit seem to go further than other circuits in holding that the words of the statute, "any matter complained of," refers to overt acts of the defendants complained of by the United States in its antitrust proceedings, not just the conspiracy behind the overt acts. Cf.: 57 Northwestern University L.Rev.

16. Union Carbide & Carbon Corp. v. Nisley, 10 Cir. 1961, 300 F.2d 561, 570, cert. dism. under Rule 60 sub nom. Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46. Cf.: New Jersey Wood Finishing Co. v. Minnesota Mining & Manufacturing Co., D.C.N.J. 1963, 216 F.Supp. 507.