ASHLAND OIL COMPANY OF CALI-
FORNIA, Plaintiff-Appellant,

v.

UNION OIL COMPANY OF CALIFOR-
NIA and Department of Energy,
Defendants-Appellees.

No. 9-38.

Temporary Emergency Court of Appeals.

Argued Oct. 28, 1977.

Decided Dec. 12, 1977.

Alfred Lawrence Toombs, Batzell, Nunn
& Bode, Washington, D. C., with whom

William H. Bode, Washington, D. C., and Robert L. Dunn, Bancroft, Avery & McAlister, San Francisco, Cal., were on the brief for plaintiff-appellant.

Moses Lasky, Brobeck, Phleger & Harrison, San Francisco, Cal., with whom John E. Munter and Forrest A. Hainline, III, San Francisco, Cal., were on the brief for the defendant-appellee Union Oil Co. of California.

Robert E. Richardson, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., and Gerald D. Freed, Washington, D. C., were on the brief for the defendant-appellee Dept. of Energy.

Before CARTER, CHRISTENSEN and JAMESON, Judges.

CHRISTENSEN, Judge:

The question presented in this case involves the period of limitations to be applied to an action for overcharges on sales of petroleum products.

On March 23, 1977, plaintiff-appellant, Ashland Oil Company of California ("Ashland"), filed suit in the United States District Court for the Northern District of California against Union Oil Company of California ("Union") and the Federal Energy Administration ("FEA")[1] alleging that Union charged prices for petroleum products sold to Ashland during the period of January 1975 to February 1976 in excess of those permitted by FEA's Mandatory Petroleum Price Regulations, 10 C.F.R. Part 212.[2] Ashland's action is based on Section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. § 754(a)(1), which incorporates § 210 of the Economic Stabilization Act, 12 U.S.C. § 1904 note.[3] Our appellate jurisdiction as to such actions rests in view of 15 U.S.C. § 754(a)(1), supra, upon § 211(b)(2) of ESA, as amended.

Union is a refiner of motor gasoline and other petroleum products. Ashland alleges that it belonged to the class of purchaser composed of non-branded independent marketers which are independent wholesale purchaser-resellers, and that Union placed Ashland into a different class of purchaser

---

1. Initially and for the purposes of this appeal FEA was named as a party in response to the admonition of *Longview Refining Co. v. Shore*, 554 F.2d 1006 (Em.App.1977), certiorari denied —— U.S. ——, 98 S.Ct. 126, 54 L.Ed.2d 98 and prior decisions of this court with respect to § 210 actions. While this case was pending on appeal the Department of Energy (DOE) was substituted for the FEA pursuant to Public Law 95–91 (August 4, 1977) and Executive Order 12009 42 F.R. 46267 (Sept. 13, 1977), which created the Department of Energy as of October 1, 1977. Pursuant to the Act the duties, functions and responsibilities of FEA have been assumed by DOE.

2. Basically, these FEA regulations prohibit a refiner from charging to any class of purchaser a price for petroleum products in excess of the weighted average price at which such products were lawfully priced in transactions with the class of purchaser concerned on May 15, 1973, plus certain increased costs.

3. Section 210 provides:

Section 210. *Suits for damages or other relief.*

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States . . . .

(b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

(1) an amount not more than three times the amount of the overcharge upon which the action is based, or

(2) not less than $100 or more than $1,000; except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge: Provided, that where the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.

and thereby charged it prices up to and including February, 1976, at least 5.5 cents higher than those charged to other members of the purchaser class to which Ashland actually belonged. The complaint is divided into two claims or "causes of action", the first for the recovery of actual overcharges, the second for treble damages on the theory of "intentional" overpricing, with attorney's fees sought on each claim. On August 16, 1976, Ashland filed with Union a statutory claim for refund pursuant to the last sentence of § 210(b). The ninety day waiting period elapsed without a refund from Union. Ashland commenced this action on March 23, 1977, more than a year after its claims accrued.[4]

FEA filed an answer denying knowledge or information sufficient to form a belief as to the truth of Ashland's critical allegations of fact and Union filed a motion to dismiss for failure of the complaint to state a claim on which relief could be granted, F.R.Civ.P. 12(b)(6).[5] Union's motion was based on the contention that Ashland's action for both actual overcharges and treble damages was barred as a matter of law by the California statute of limitations, section 340(1), California Code of Civil Procedure. That statute prescribes a one year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture."[6] Union's motion was granted by the trial court on June 23, 1977, and on June 24, 1977, final judgment was entered dismissing Ashland's action in its entirety with prejudice, costs to Union.[7] Ashland filed a timely notice of appeal to this court on July 22, 1977.

It is contended in support of this appeal that the district court erred in dismissing

4. Ashland contended in the district court that its claims did not accrue until its actual discovery of the overcharges, a position properly rejected below and not pressed here apart from the issue of fraudulent concealment. The latter issue was only tangentially discussed by the trial court: "And I think on the basis of your president's affidavit it's clear that they were aware of the . . . overcharge and its extent prior to the bar of the statute of limitations, and the fact that they didn't file is . . just one of those unfortunate things that happens all the time." The point was missed by the trial court that fraudulent concealment could extend a period of limitations beyond its normal termination even though that time had not fully expired before the concealment was discovered. See *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874). This point becomes immaterial in view of our ruling hereafter that there was no fraudulent concealment.

The contention suggested by Ashland to the trial court that its claim for reimbursement for overcharges did not accrue until the expiration of the 90 day notice required by § 210, *supra*, has been abandoned on this appeal.

5. In connection with Ashland's argument that it had not discovered the overcharges until more than a year after they were made, it filed and the court considered the affidavit of its president, thus invoking Rule 56 by virtue of the last sentence of Rule 12(b).

6. Section 338(1), Cal.C.C.P., provides a three year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

7. The judgment was entered without written opinion. However, the court's principal reasoning is evident in the following excerpts from the transcript of its oral decision:

"The Court: . . . where there is a private action provided for in the federal statute, and there is no statute of limitations, that I think you then have to go to the applicable state statute of limitations, and I think it's very clear in the State of California, it's 340.1.

". . . You see, the thing is, I really *don't believe that—that it was contemplated*, or that a court would hold that you have one year within which to file after the claim arises, if you're seeking trebling, and you have three or four or five or some other period to file, if you're seeking single damages. I just don't think so. I think you've got one claim here, and that one claim, depending upon the circumstances, may entitle you to the trebling of the amount of the overcharge.

". . . But to me it's clear there's only one statute of limitations for the claim, even though the possibility of trebling exists and I think under Leh [*Leh v. General Petroleum Corp.*, 330 F.2d 288 (9th Cir. 1964), *rev'd on other grounds*, 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134 (1964)], I look to the state statutes, and regardless of Holland [*Holland v. Nelson*, 5 Cal.App.3d 308, 85 Cal.Rptr. 117 (1970)], it seems to me that this is in effect, where the possibility of trebling occurs, is in the nature of a penal statute, and that the one-year statute of limitations under 340.1 is applicable."

the entire action because California's three year statute of limitations should be held to govern at least the claim for the recovery of actual overcharges as "[a]n action upon a liability created by statute, other than a penalty of forfeiture," Cal.C.C.P. 338(1). In the alternative, Ashland would have this court apply California's three year statute of limitations to both counts of its complaint. Finally, Ashland argues that the doctrine of fraudulent concealment sustains both counts of the complaint, since Union allegedly "concealed" the existence of the improper classification until within a year of the filing of its complaint. We first address the latter point.

I

■ Even though California's statute of limitations applies in this case, any issue relating to accrual and tolling is governed by federal law. *Cope v. Anderson*, 331 U.S. 461, 464, 67 S.Ct. 1340, 91 L.Ed. 1602 (1946); *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1940). Where acts causing injury are fraudulently concealed from the injured party or where fraud furnishing the basis of an action is of such nature as to conceal itself, a statute of limitations is tolled until the injured party discovers, or with due diligence could have discovered, the injury. *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1945); *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875), *supra*; *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713. It is clear, however, that mere ignorance on the part of a plaintiff is not sufficient. *Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807 (1879).

In support of its claim of fraudulent concealment Ashland argues that by their very nature, violations of the type alleged herein are not self-revealing and that it had insufficient knowledge of the foundations of a claim to start the statute running.[8]

■ Appellant has misconceived the governing law. To support the result contended for plaintiff would have to establish either that the defendant fraudulently concealed the conduct forming the basis of the claim or that the defendant's conduct by reason of its fraudulent nature was inherently self-concealing. The fact that FEA pricing regulations involve complicated accounting processes and that price information resulting from those processes is not "self-revealing" is not enough to sustain a claim of fraudulent concealment, nor is any mere failure on Union's part to publish price information that it was not required otherwise to publish.

We do not determinatively fault Ashland's position merely because of its failure to plead with particularity the circumstances constituting the claimed fraudulent concealment, or even to mention such a claim in its complaint.[9] The trial court considered as on summary judgment as we heretofore observed the affidavit of Ashland's president in resistance to the motion to dismiss, and any defective pleading could be deemed supplemented for the purposes of our present inquiry by the substance of this collateral showing. Ashland's trouble on the point is that the affidavit not only failed to support Ashland's position on the issue of fraudulent concealment but tended affirmatively to further demonstrate its

---

**8.** Ashland asserts that in order to determine if Union was in compliance with the FEA pricing regulations Ashland must have discovered: (1) the names of each other member of the relevant class of purchaser; (2) the May 15, 1973, price charged to each such applicable purchaser; (3) the volume of each such purchaser on May 15, 1973; and (4) Union's cumulative increased costs for the period in question. This information it is said is not published anywhere, and in fact is considered confidential by

the FEA, and hence the running of the statute should be deemed tolled until the time Ashland actually discovered the alleged overcharges.

**9.** But see F.R.Civ.P. 9(b). See also *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975); *Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir. 1974); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 370 (1974).

lack of merit.[10] No tolling having occurred in view of the uncontroverted facts of record, we proceed to consider the period or periods of limitation applicable to plaintiff's complaint.

## II

Neither the EPAA nor § 210 of the ESA contains a limitation provision. Generally in the absence of a statutory limitation provided by Congress, a federal court will apply the most analogous state law of limitations. *E. g., Runyon v. McCrary,* 427 U.S. 160, 179–80, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Civil Rights Act of 1866); *Auto Workers v. Hoosier Corp.,* 383 U.S. 696, 701–05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (Labor Management Relations Act); *O'Sullivan v. Felix,* 233 U.S. 318, 322–23, 34 S.Ct. 596, 58 L.Ed. 980 (1914) (Civil Rights Act of 1871); *Chattanooga Foundry & Pipeworks v. Atlanta,* 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241 (1906) (Sherman Act); *Campbell v. Haverhill,* 155 U.S. 610, 614–16, 39 L.Ed. 280 (1895) (Patent Act). However, in determining whether a state statute of limitations will be applied to a federal right, courts must be guided by the public policy expressed by Congress. Thus, there need not be applied a state limitation period which the court finds to be inconsistent with the federal policy involved.

The Supreme Court recently stated in *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 335, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977), in refusing to limit the rights of the government by a state statute of limitations:

> But the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state laws will not frustrate or interfere with the implementation of national policies. "Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide." *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, [95 S.Ct. 1716, 44 L.Ed.2d 295] [(1974)]. State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute.

As with the equal employment opportunity statute with which *Occidental Life* was concerned, there is strong national policy expressed in the EPAA. But dissimilarly, EPAA contains no indication that expressed national policy is inconsistent with any fixed period of limitation borrowed from state law, nor does our case directly involve enforcement of a public right by governmental action as did *Occidental Life.* There is no suggestion whatever in the statutory structure undergirding the claims before us that Congress intended no limitation provisions to apply or that state statutes of limitations should not be looked to in accordance with the general rule in the absence of express federal provision. Nor can anything be discerned to indicate that the relatively brief but not unusual period of limitation found in state law should not be applied to any claims in the nature of penalties.

The national policy otherwise expressed in § 210 and its legislative history yet is instructive, for it tends to repel the extreme view taken by each of the parties—Ashland's that California's three-year limitations period and Union's that its one-year period should be applied indiscriminately to both claims of the complaint. While there

---

10. The affidavit of Ashland's president, Walter J. Simas, submitted in opposition to Union's motion to dismiss, states that in June, 1976, Ashland employed special counsel to investigate the pricing practices of all its major suppliers. Approximately one month later, in July, 1976, Ashland was advised that Union had placed Ashland in an improper class of purchaser and had thereby overcharged Ashland for petroleum products. Such allegations do not document a claim of due diligence, and indeed these facts appear contrary to any theory of due diligence for, within a month after special counsel began its investigation, the existence of the alleged overcharges was discovered. See *Moviecolor, Ltd. v. Eastman Kodak Co.,* 288 F.2d 80 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).

is public policy clearly evident to provide both remedy for and deterrence against the violation of pricing regulations,[11] the Congress made it equally clear that the recovery of treble damages in the nature of a penalty for violating those regulations would involve more stringent proof of additional elements than that warranting the award of merely compensatory relief.[12]

We have concluded that the national policy can best be harmonized with the state statute of limitations by applying the one year bar to Ashland's second claim, and allowing maintenance of the first claim as an action other than for a penalty. Any other result, we believe, would be inconsistent with the most persuasive local interpretation of the California statute of limitations. We further are of the opinion that overriding national policy would require us to comport any variance or uncertainty in the California rule to the indicated result.[13] In ascertaining what state statute of limitations should be applied to federally created claims, a federal court will accept the state court interpretations of the state's limitations statute, but the nature of the claims presented will be determined by federal law. *Moviecolor, Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 83 (2d Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961), *supra*; *Bertha Building Corp. v. National Theatres Corporation*, 269 F.2d 785, 788 (2d Cir. 1959); see also, *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 706, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), *supra*.

The California Code of Civil Procedure specifies two limitation periods the applicability of which must be considered in the light of national policy and particularly in view of the provisions of § 210 of ESA. Section 338(1) provides a three year limitation for "[a]n action upon a liability created by statute, other than for a penalty or forfeiture" and § 340(1) mandates a one year limitation for "[a]n action upon a statute for a penalty or forfeiture." Section 210 expressly provides for both compensatory damages and exemplary damages, drawing a clear distinction, as we have noted.[14]

11. The absence of congressional debate on whether to add § 210 of ESA to EPAA underscores the importance which was attached to the addition of the private remedies provided by the former. The lack of extensive government machinery to police the price regulations coupled with their emergency nature and complexity made the role of private actions critical. The House Report with reference to § 210 stated:

> The Committee, in line with the Administration's emphatic request for voluntary surveillance to assure compliance with price and rent regulations and orders, adopted this section so that it would serve not only to provide a means to recover losses, but would provide a strong deterrent to those who would willfully violate this Act.

H.R.Rep.No.92–714, 92nd Cong., 1st Sess. (1971). From the Senate Report:

> Section 210 provides a traditional method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering a legal wrong to bring a treble damage action against a violator.

Senate Rep.No.92–507, 92nd Cong., 1st Sess. (1971).

12. Section 210 draws clear distinction between remedial recovery of overcharges and treble damages for intentional violations in the nature of a penalty beyond compensation; and for each claim there is specified a prerequisite not applicable to the other. See *Manning v. Univ. of Notre Dame Du Lac*, 484 F.2d 501 (TECA 1973).

13. See *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 705–06, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966), *supra*:

> The Union argues that if the timeliness of this action is to be determined by reference to Indiana statutes, federal law precludes reference to the Indiana six-year provision governing contracts in writing.
>
> . . . . .
>
> We agree that the characterization of this action for the purpose of selecting the appropriate state limitations provision is ultimately a question of federal law. But there is no reason to reject the characterization that state law would impose unless the characterization is unreasonable or otherwise inconsistent with national labor policy.

14. The gist has been fairly summarized:

> Compensatory relief, i. e., refund of the amount of overcharge, is available in all cases of overcharge provided that, except in the case of willful overcharges, the purchaser requested and did not receive a refund from the overcharging seller within 90 days of such request. Exemplary damages, i. e., the

TECA has considered in different context the distinction between an action for actual damages and one for treble damages [15] in three prior cases [16] but has not yet found it necessary to consider the distinction, if any, between the terms "intentional" and "wilful" as employed in different parts of § 210. Nor do we consider it essential to do so now. Whether for wilful or intentional overcharging, or both, the award of treble damages pursuant to § 210 would be in the nature of a penalty within the contemplation of California law.

■ The California courts have held actions for damages beyond or without reference to actual loss to be actions for a "penalty or forfeiture". *County of San Diego v. Milotz*, 46 Cal.2d 761, 300 P.2d 1 (1956); *Heesy v. Vaughn*, 31 Cal.2d 701, 192 P.2d 753 (1948); *Miller v. Municipal Court*, 22 Cal.2d 818, 142 P.2d 297 (1943); see also *Leh v. General Petroleum Corp.*, 330 F.2d 288 (9th Cir. 1964), *rev'd on other grounds*, 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965). Clearly a claim for treble damages in reliance upon § 210 is within this definition.

■ However, to apply the one year statute to an action for actual damages would be inconsistent with the express terms of § 210 and its underlying policy. An action for compensation logically is not "[a]n action upon a statute for a penalty or forfeiture." In the past TECA has noted the complexity of the price regulations and the difficulty of determining compliance therewith. *See Longview, supra*, and *Evans v. Suntreat, supra*. Given this complexity, it would be especially unreasonable to bar gratuitously an action for reimbursement of overcharges on the basis of the one year statute of limitations. The logical, indeed express, applicability of California's three year statute of limitations to the claim for overcharges must be recognized.[17]

### III

Our conclusion that a § 210 claim for actual damages is controlled by § 338(1) while a claim for treble damages is barred in accordance with § 340(1) is not inconsist-

greater of treble damages or $100 to $1,000, are available at the discretion of the court in cases where the overcharge was intentional and not the result of bona fide error. These are two different rights of action distinguishable as to the elements that must be proved in order to be granted relief. (FEA Br. p. 9.)

**15.** Union contends that § 210 provides two remedies, but only one "cause of action." However, this argument disregards the essentially different combination of elements required for claims as they were separately stated in conformity with Rule 8(e)(2), F.R.Civ.P. Union further asserts that the entire section is a penal statute inasmuch as ESA was originally enacted as a criminal statute and the amendments allowing civil recovery were designed to assist the enforcement of the criminal provision by deterring and punishing violators of the price regulations. We reject this reasoning.

**16.** *Longview Refining Co. v. Shore*, 554 F.2d 1006 (Em.App.1977) cert. denied —— U.S. ——, 98 S.Ct. 126, 54 L.Ed.2d 98; *Evans v. Suntreat Growers & Shippers, Inc.*, 531 F.2d 568 (TECA 1976); *Manning v. Univ. of Notre Dame Du Lac*, 484 F.2d 501 (TECA 1973), *supra*. See also *DeRieux v. 5 Smiths, Inc.*, 499 F.2d 1321, *cert. denied*, 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). Union contends that *DeRieux* indicates that the potential for treble damages under § 210 renders all actions under that

statute penal in nature. However, the issue presented in *DeRieux* concerned the retroactivity of § 210 where the plaintiff was suing for treble damages. The court did not discuss an action for actual damages under § 210.

**17.** Union would have us read § 340(1) of the California statute as if it provided that "any action in reliance upon a statute providing liability for a penalty alone or with other types of liability shall be brought within one year." It is much less strained and reasonable to read it as providing that "any action to recover a penalty created by statute shall be brought within one year." We are not impressed with the argument that on some unitary theory a claim not presenting foundations for recovery of a penalty and not seeking any penalty must be deemed nonetheless an action for a penalty, and that notwithstanding the separation of essentially different claims in a complaint as provided by Rule 8(e)(2), F.R.C.P., the failure of one by reason of a statute of limitations necessarily entails the failure of both. Nor do we find convincing the idea that the use of the term "action" in the California statute precludes separate consideration of each of Ashland's claims as actions. Neither would be any less or more a separate action if standing alone in a complaint.

ent with California law. In *United States v. Magnolia Motor & Logging Co.*, 208 F.Supp. 63 (N.D.Cal.1962), it was held that Cal.C.C.P. Section 340(1) barred the United States' action for treble damages, but not for actual damages. In *Stock v. Meek*, 35 Cal.2d 809, 221 P.2d 15 (1950), and *Porter v. Arthur Murray, Inc.*, 249 Cal.App.2d 410, 57 Cal.Rptr. 554 (1967), actions for treble damages were dismissed; however, the plaintiff was allowed to recover for "money had and received". *See also, Beck v. Arthur Murray, Inc.*, 245 Cal.App.2d 976, 54 Cal.Rptr. 328 (1966). (The court indicates that the plaintiff might recover actual damages even though a claim for treble damages may ultimately be denied.)

Union attempts to distinguish these cases on the ground that in them the right to single damages existed at common law, whereas Ashland's action for actual damages is dependent on § 210. We need not pursue the possibility that the recovery of overcharges could be deemed as a pendent claim in the nature of a common law count for money had and received to avoid such distinction. In *Stone v. James*, 142 Cal. App.2d 738, 299 P.2d 305 (1956), the court indicated that a statutory right to recover prepaid finance charges was governed by a two year statute of limitations, although an action under the statute for the entire purchase price was in the nature of a penalty and therefore governed by § 340(1).[18] This case in the absence of a ruling by the California Supreme Court to the contrary is at least persuasive of California law. Cf. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940), and *Six Companies of California v. Joint Highway District No. 13*, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940).

Ashland argues on the basis of *Holland v. Nelson*, 5 Cal.App.3d 308, 85 Cal.Rptr. 117 (1970), that California's three year statute of limitations should be applied to its claim for treble damages as well as to that for compensation. In *Holland*, it was held that the one year limitation for a statutory penalty or forfeiture applied neither to the plaintiff's claim for actual damages nor to that for treble damages. The court reasoned that the option of awarding exemplary damages did not convert the statutory right of action for either single or treble damages into one for a penalty.[19]

The *Holland* case is contrary to the weight of California authority concluding that statutes permitting recovery in excess of actual damages are penal in nature.[20]

18. The plaintiff in *Stone* sued under California's Civil Code § 2982, subdivisions (d) and (e). Subdivision (d) of that statute provided that a buyer of a motor vehicle under a conditional sales contract could pay off the entire debt at any time prior to its maturity. In that event the buyer would be entitled to receive a refund credit for any prepaid finance charges less certain adjustments required by the statute. If the seller failed to refund any prepaid finance charges subdivision (e) provided that the buyer could recover the total amount paid under the contract. The court held that subdivisions (d) and (e) of Section 2982 were severable. Subdivision (e) was held to provide for a penalty, barred by § 340(1). The court did not question that an action to recover prepaid finance charges under subdivision (d) would be governed by the longer period of two years. However, since the complaint was filed more than two years after the sales transaction at issue occurred, a demurrer to the entire action was sustained.

19. The *Holland* court stated:
   [T]he provision in Civil Code, Section 1812.-62, allowing to the court the option of grant-

ing judgment for treble damages, is not to be construed as converting the statutory right of action into one for penal damages. To adopt the contrary construction would either apply a shorter period of limitation than that established by Code of Civil Procedure section 338, subdivision (1), for actions on other statutory liabilities or would put a plaintiff in the position of being unable to determine which statute of limitations applies to his cause until, after trial, the court determined in its discretion whether to allow treble damages. 85 Cal.Rptr. at 119.

20. For example, the California Welfare and Institutions Code § 2223 provides for a discretionary award of double damages. In *Dept. of Social Welfare v. Stauffer*, 56 Cal.App.2d 699, 133 P.2d 692 (1943), California's one year statute of limitation was held to apply to an action under § 2223 for double damages. *See also, Dept. of Social Welfare v. Wingo*, 77 Cal. App.2d 316, 175 P.2d 262 (1946). California's Usury Act of 1919 provided for a discretionary award of treble the usurious interest. This provision has been held to be a statutory penalty. *Penziner v. West American Finance Co.*, 10

Thus, although the *Holland* court was correct in concluding that a claim for actual damages is not one for a penalty, we decline to accept the distinction it would draw between a mandatory and permissive award of treble damages with reference to the applicable limitation period.[21] The preponderance of California law establishes that an award in excess of compensatory damages, whether discretionary or not, is to be considered a penalty for the purposes of its limitations statute.

## IV

We conclude in sum that the district court erred in dismissing Ashland's claim for actual damages. Such a separate claim for actual loss is not "[a]n *action* upon a statute for a penalty or forfeiture." Cal.C. C.P. § 340(1). To hold otherwise would be at variance with the express provisions of § 210, creating alternative rights of action against violators of price regulations de-pendent upon a different combination of elements, and through an illogical shortening of the period of limitations with respect to non-penalty claims would unjustifiably frustrate congressional policy underlying § 210 for the encouragement of private surveillance of price regulations. The district court was correct in dismissing Ashland's claim for treble damages which as distinguished from the first claim clearly was for a penalty.

Affirmed in part, reversed in part, and remanded for further proceedings in harmony with this opinion.

IT IS SO ORDERED.

Cal.2d 160, 74 P.2d 252 (1937); *Esposti v. River Brothers, Inc.*, 207 Cal. 570, 279 P. 423 (1929). Other cases where the discretionary award of treble damages was termed penal in nature include *Gwinn v. Goldman*, 57 Cal.App.2d 393, 134 P.2d 915 (1943), and *Swall v. Anderson*, 60 Cal.App.2d 825, 141 P.2d 912 (1943).

**21.** Ashland's ambivalence between claimed severability of its action to realize its compensatory claim and asserted inseparability of the statutory limitation to rescue its discretionary treble damage count has not dispelled our support of the former position nor served to enlist our acceptance of the latter.