James CARBONE, Plaintiff-Appellant,

v.

GULF OIL CORPORATION,
Defendant-Appellee.

No. 3–51.

Temporary Emergency Court of Appeals.

Argued May 13, 1986.

Decided Jan. 23, 1987.

Rehearing and Rehearing En Banc
Denied March 6, 1987.

Benjamin E. Zuckerman, of Sherr, Moses and Zuckerman, Norristown, Pa., with whom Kramer, Kapustin & Schatz and Zarwin, Baum, Resnick and Cohen, Philadelphia, Pa., were on the brief, for plaintiff-appellant, James Carbone.

John W. Castles, III, with whom Banks Brown, Ellen M. Saideman, and Lord, Day and Lord, New York City, T. Andrew Culbert, George V. Strong, III, Drinker Biddle and Reath, Philadelphia, Pa., and Charles O. Murray, III, San Ramon, Cal., were on the brief, for defendant-appellee, Gulf Oil Corp.

Before JAMESON, BECKER and PECK, Judges.

WILLIAM H. BECKER, Judge.

This is an appeal by James Carbone from a final judgment of the District Court dismissing his action for damages under Section 210 of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 Note, as incorporated in the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751 *et seq.* The EPAA was replaced in December 1975 by the Energy Policy and Conservation Act (EPCA), 42 U.S.C. § 6201 *et seq.* with retention of the savings clause

of 15 U.S.C. § 760g. The detailed legislative history of these successive acts is summarized in *United States of America v. Exxon Corporation* (TECA 1984) 744 F.2d 98 at pages 106 to 111 inclusive, *cert. denied*, 469 U.S. 1077, 105 S.Ct. 576, 83 L.Ed.2d 515.

The nature of the allegations of the complaint of appellant and of the motion of appellee to dismiss follow.

## PLEADINGS IN THE DISTRICT COURT

### Appellant's Complaint

The appellant James Carbone (Carbone) as plaintiff instituted this action against appellee, Gulf Oil Corporation (Gulf) as defendant, by filing his complaint on January 28, 1985, in the United States District Court for the Eastern District of Pennsylvania (District Court). Record on Appeal, (R.) Tab B, 1 through 8.

In that complaint the appellant Carbone expressly stated that jurisdiction was based upon the provisions of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 Note, incorporated in 1973 in the EPAA, "(with specific references to Section 210(a) thereof), and the regulations promulgated thereunder, 10 C.F.R. Parts 210 and 211; and the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 *et seq.*" ... "and the regulations promulgated thereunder." (R.1–2.)

The appellant Carbone included in his complaint "Part III CLASS ACTION ALLEGATIONS"[1] (R.2–5), in which he alleged that the action was brought pursuant to Rule 23, F.R.Civ.P., on behalf of a class estimated at one thousand, defined as "all operators of independently owned retail Gulf gasoline stations who were granted discounts from Gulf on covered petroleum products and who ceased receiving such discounts as a result of Defendant's discontinuance of the discounts on or about February 1, 1979." The class period was de-

fined in Part III of the complaint as the period from February 1, 1979 to January 28, 1981, when the effective regulations, alleged to be violated by Gulf, expired. Other class action allegations in Part III of the complaint included allegations concerning the wide geographical distribution of the class members, manageability of the class, impracticality of joinder of other class members, predominance of common and typical questions of fact and law, fairness, adequacy and superiority of representation of the class by appellant and his counsel.

In the part of the complaint entitled "PART II VIOLATIONS ALLEGED" (R.5–7), appellant Carbone alleged that at times between May 15, 1973 and February 1, 1979, he and class members purchased from Gulf "covered petroleum gasoline products at a discount price below Defendant's dealer tankwagon prices then in effect; that appellant Carbone made such purchases between approximately January 1, 1977 and February 1, 1979; that on or about February 1, 1979, Gulf discontinued the granting of discount prices for the purchase of covered products; that, from that date until January 28, 1981, the appellant was required to purchase covered products at Gulf tankwagon prices, which constituted an alleged reclassification by Gulf of appellant from Gulf's class or classes of purchasers entitled to discount purchase prices below dealer tankwagon price levels; that results of the alleged continuing violation of the EPAA, and the regulations thereunder, were damages to the appellant equal to the lost discount on each gallon of covered gasoline petroleum products; that the acts of Gulf violated the EPAA and regulations thereunder, including Section 210(a) of ESA and 10 C.F.R. 210.62(b) and (c) in the following particulars, (a) improper discrimination among purchasers of allocated gasoline, (b) imposition of purchase terms and (c) improper reclassification of appellant from class or classes entitled to receipt of discount prices for purchase of

---

1. Appellant also filed a motion for class certification which was declared moot at the time the motion to dismiss the action was granted. (R. Tab C, 1, footnote.) Because no ruling on the merits of this motion was made by the District Court, no opinion on the merits of the motion is expressed herein.

covered gasoline petroleum products; that appellant suffered damages from February 1, 1979 to January 28, 1981, equal to the lost discounts; that all of the actions of appellee Gulf were willful and intentional, "not resulting from any bona fide error committed by Defendant" appellee Gulf.

Included in the complaint was a part entitled "V FRAUDULENT CONCEAL-MENT" (R. 7–8.) In this Part V appellant Carbone alleged that he could not through reasonable diligence have discovered the alleged improper conduct of appellee Gulf earlier than February 10, 1984, when this Court issued its opinion in *Wellven, Inc. v. Gulf Oil Corporation*,[2] (Slip Opinion dated February 10, 1984, attached to the complaint as Exhibit A); that appellee Gulf "engaged in conduct, made misrepresentations, nondisclosures, and employed techniques of secrecy to avoid detection of its wrongdoing and to fraudulently conceal the true nature of its conduct" by (a) filing position papers with the Department of Energy (DOE) which actively concealed the alleged violations, and (b) filed pleadings in the *Wellven* case (cited in note 2, *supra* ), which actively concealed the alleged violations.

In its prayer for relief appellant Carbone prayed for judgment against appellee Gulf from resulting damages to plaintiff and plaintiff class, and that the damages be tripled and that appellant Carbone also be awarded reasonable attorneys' fees and costs. (R. 8).

Appellee Carbone demanded a jury trial on his complaint. (R. 1.)

### Motion to Dismiss of Appellant Gulf

On February 29, 1985, the appellee Gulf, as defendant, filed in the District Court its motion to dismiss the action of Carbone on the ground that the action was barred by the applicable statute of limitations of the State of Pennsylvania. (R. Tab A, the docket sheet.) The motion was accompanied by suggestions in support.

### JUDGMENT OF DISTRICT COURT GRANTING MOTION TO DISMISS

On November 15, 1985, 630 F.Supp. 67, after considering the motion to dismiss of appellee Gulf, including the memoranda in support and opposition, and oral argument of counsel, the District Court filed a *Memorandum and Order* stating its findings of fact and conclusions of law (R. Tab C, 1–6.), and entered an Order granting the motion of Gulf to dismiss the action. (R. Tab C, 7.) This order was entered by the Clerk on November 17, 1985 (Docket Sheet, and R. Tab C, 8.) The order was treated by the parties, and will by us be treated, as a final judgment. This appeal by appellant Carbone followed.

### Findings of Fact and Conclusions of Law of District Court

In its *Memorandum and Order* the District Court expressly found and concluded in substance as follows: The action of Carbone (individually and on behalf of a similarly situated class) as owner of a gasoline station was for alleged violations of the ESA and EPAA; that Section 210(b) of the ESA created an action for legal wrong, namely for the overcharge defined by Section 210(c) as the amount the consideration exceeds the applicable ceiling price; that, in case the defendant establishes that the overcharge was not intentional and resulted from bona fide error, it is provided under Section 210(b) that the liability of the defendant shall be limited to the amount of the overcharge; that when the overcharge is not willful, no action may be brought unless the purchaser has first presented to the seller a bona fide claim for refund of the overcharges, and has not received payment within 90 days from presentation of the claim for refund; that the ESA does not contain a statute of limitations; that the District Court must, under the law, apply the most analogous state statute of limitations; that if this action is one for a "civil penalty" it must have been filed within two years under the Pennsylvania statute of limitations, 42 Pa.C.S.A. § 5524(5) effective 60 days from its enactment on

**2.** *Wellven, Inc. v. Gulf Oil Corporation* (TECA 1984) 731 F.2d 892.

December 20, 1982 [prior to which the statutory limitation on filing an action for a civil penalty was one year under 42 Pa.C. Stat. § 5523(2)]; that otherwise a six year statute of limitations applies under 42 Pa. C.S.A. § 5527; that appellant Carbone claims a willful overcharge and seeks treble damages; that under the allegations of the complaint the plaintiffs "cause of action accrued" on or about February 1, 1979, when the discount was terminated by unilateral action of Gulf; that Carbone "asserts that he could not have discovered Gulf's alleged improper conduct until the final decision in *Wellven* so that the limitations period was tolled by Gulf's fraudulent concealment"; that "[O]f course if the operative facts causing the alleged injury were fraudulently concealed from the injured party, the statute of limitations would be tolled until the injured party discovered or could have discovered the injury," citing the *Western Mountain Oil* [3] case; that "plaintiff has not alleged and cannot allege that defendant concealed operative facts giving rise to the injury,"; that the "discount termination, the operative fact, was known to the plaintiff here, as well as to the plaintiff in *Wellven,* on or about February 1, 1979, when the discount to the plaintiff was terminated"; that "this plaintiff just as Wellven, could have instituted action at that time"; that, as concluded before, the statute of limitations period ran from February 1, 1979; that "Section 210 of the ESA establishes two separate causes of action: 1) a treble damage action for willful overcharge; and 2) a compensatory damage action for intentional non-willful overcharge"; that "[I]t is clear that an action for willful overcharge is penal in nature" citing the case *Ashland Oil Co. v. Union Oil Co.* (TECA 1977), 567 F.2d 984 at 990, note 14; that appellant's claim is for willful overcharges only and is for a penalty under holdings of this Court (TECA) which are binding on the District Court; that the *Ashland Oil* case, *supra,* "clearly characterizes a treble damage action for willful overcharge under § 210 as an action for a penalty"; that contrary to the claim of appellant that only two-thirds of the

damages claimed are punitive and one-third is compensatory; that this Court (TECA) "has characterized the entire cause of action as one for a penalty"; that whether the time runs from the date of the last act of overcharge in January 1981, or the date of the alleged improper classification on February 1, 1979, the action is barred as one on a civil penalty by the applicable analogous Statute of Limitations of the State of Pennsylvania.

As directed by formal order signed by the District Judge, the action was dismissed on November 18, 1985. (R. Tab C, second to last unnumbered page.)

## CONTENTIONS ON APPEAL OF APPELLANT CARBONE

In its original brief on appeal (pages 4 and 24) appellant Carbone states its contentions as follows:

A. The District Court erred in ruling that Plaintiff/appellants' claim is barred by the Pennsylvania Statute of Limitations.

1. The applicable Pennsylvania Statute of Limitations is six years [citing 42 Pa.C.S.A. § 5527(6).]

2. In the alternative, the applicable Pennsylvania Statute of Limitations for the basic overcharge damages is six years.

In its reply brief (pages 1 and 5) appellant states in reply to the arguments of appellee Gulf in its brief on appeal the following additional consistent contentions:

A. Pennsylvania law must be considered in determining the appropriate Statute of Limitations.

B. Section 210(b) establishes one cause of action with, at most, different damages provisions depending upon the type of overcharge violation involved.

## CONTENTIONS ON APPEAL OF APPELLEE GULF

In its brief on appeal (pages i, 4 and 13) Gulf states its contentions as follows:

---

**3.** *Western Mountain Oil, Inc. v. Gulf Oil Corporation* (TECA 1983), 726 F.2d 765 at 768.

A. The District Court correctly applied the Statute of Limitations for actions upon a statute for a penalty or forfeiture.

B. Carbone's action for willful overcharges cannot be severed.

## CONCLUSIONS AND JUDGMENT OF THIS COURT ON APPEAL

For the reasons stated hereinafter in detail, we conclude that the judgment of dismissal of the action by the District Court was erroneous and should be reversed; and that the action should be remanded for further proceedings in accordance with this opinion and judgment on this appeal.

### I.

*The District Court Erred in Concluding That "Entire Cause of Action for Willful Overcharge" of Appellant Carbone Under Section 210 Was "One for a Penalty"*

In concluding that the "entire cause of action for willful overcharge" was one for a penalty the District Court erred (a) in applying concepts of a "cause of action" to this federal action under Section 210(a) of the ESA, a concept impermissible under the Federal Rules of Civil Procedure (F.R.Civ. P.); (b) in concluding that the decisions of this Temporary Emergency Court of Appeals of the United States (TECA) compelled the conclusion that the action of appellant under Section 210 of the ESA, in which willful overcharges was alleged, was for a cause of action for a civil penalty; and (c) in applying impliedly impermissible election of remedies doctrines.

(a) The Application to This Federal Action of Impermissible "Cause of Action" and Associated Concepts Was Erroneous.

In determining the nature of the federal statutory action of appellant under Section 210 of the ESA to recover damages for an overcharge for petroleum products in violation of EPAA and regulations thereunder, the District Court was led into an erroneous application of the concepts of a "cause of action" and the associated theory of the case and election of remedies doctrines.

The application of the "cause of action" concept (and the associated theory of the case and election of remedies doctrines) was deliberately, expressly and clearly eliminated in federal procedure in 1938 when the Federal Rules of Civil Procedure (F.R.Civ.P.) became effective. Rule 2, F.R. Civ.P., which expressed in a few words the officially and repeatedly expressed determination to abolish the "cause of action" concept as well as the form of action and the associated theory of the case and election of remedies doctrines. Every authoritative work on federal civil procedure emphasizes the abolition of these procedural, and sometimes decisive, concepts of the past. For example, see: 4 Wright and Miller, *Federal Practice and Procedures, Civil,* §§ 1041–1045; 2 *Moore's Federal Practice,* §§ 2.04–2.06. Each of these cited works set forth the history and objects of the adoption of Rule 2, F.R.Civ.P. A summary of the history, purposes and current effect of the abolition of the cause of action theory in federal civil procedure by Rule 2, F.R. Civ.P., is set forth in § 67 of Wright, *The Law of Federal Courts,* Fourth Edition.

In each of the comprehensive authorities cited above it is noted that a federal court may find it necessary to consider the nature of the federal action to determine what state statute of limitation is applicable by analogy to a federal claim when the state statutes of limitation are couched in terms of the old distinctions. Wright, *The Law of Federal Courts, supra,* § 67 at page 437; 4 Wright & Miller, *Federal Practice and Procedure, supra,* § 1045, including note 46; 2 *Moore's Federal Practice, supra,* ¶ 2.06(4), note 17, at page 2–49. In this connection it is noted that in the opinion of this Court in *Ashland Oil Co. v. Union Oil Co., supra,* 567 F.2d 984, although it is stated that counsel for appellant erroneously pleaded two "causes of action", Judge Christensen, author of the opinion, carefully avoided using the term which appears in quotations. No federal rule of civil procedure, or controlling federal decision permits, in construing the na-

ture of a federal statutory action, application of a state "cause of action" concept; or the application of an associated state theory of the case and election of remedies doctrine. If the plaintiff is entitled to recover on any theory the action shall not be dismissed. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Wright, *The Law of Federal Courts, supra*, § 67(2)–(6) at page 441–443, and authorities therein cited.

■ And the election of remedies doctrine is inapplicable under the Federal Rules of Civil Procedure. *Bernstein v. United States* (C.A.10, 1958), 256 F.2d 697 at 706, *cert. dismissed*, (1959) 358 U.S. 924, 79 S.Ct. 296, 3 L.Ed.2d 298; 25 *Am.Jur.*2d *Election of Remedies*, § 649. So we proceed to determine the nature of the action of appellant in the District Court under Section 210 of the ESA.

(b) The Claim of Appellant in the District Court Under Section 210 of the ESA Was a Federal Statutory Action For Recovery of the Single Amount Alleged Overcharge, Was An Action For Compensatory Damage, And Was Not a Civil Penalty.

■ We first consider the claim of appellant to recover the single amount of the overcharge under Section 210. The claim of appellant for treble damages and attorneys fees will be considered separately.

Having found the "cause of action" concept, and the associated state "theory of the case" and "election of remedies" doctrines to be inapplicable to this federal statutory action under Section 210 of the ESA, we proceed to determine the nature of the claim to recover the amount of the overcharge as a federal question to be determined in keeping with the policy underlying creation of the federal statutory action. For it is the determination of the nature of a federal action authorized by a federal statute that is generally recognized to be a federal question to be determined by a federal court consistently with federal policy and jurisprudence. 51 *Am.Jur.*2d § 74 and authorities therein cited, at pages 652–654 and in the pocket part, including *Mov-*

*iecolor v. Eastman Kodak Co.* (C.A.2 1961), 288 F.2d 80, 90 A.L.R.2d 252, *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; *Ashland Oil Co. v. Union Oil Co.* (TECA 1977), *supra*, 567 F.2d 984. This view is confirmed and established in the recent decision of the Supreme Court of the United States in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

We note that the federal policy underlying the creation of the action under Section 210 is the deterrence of overcharges in violation of the applicable statute and regulations and the recovery of damages, including the amount of single damages as compensation, in the event of any such violation. See § 210 of the ESA Amendments of 1971, and the legislative history thereof. Section 210 and the relevant legislative history supporting this view are set out in *Eastern Air Lines, Inc. v. Atlantic Richfield Co.* (TECA 1983), 712 F.2d 1402 at pages 1411 and 1412. The text of Section 210 and the legislative history thereof, cited above, establish that the federal action under Section 210 for the single amount of an overcharge, or for injunctive and declaratory relief is for compensatory recovery for an overcharge, if made, or for deterrence of such violation of statute or regulation, and the deterrence of overcharges. As stated above, the nature of the claim for treble damages will be discussed separately hereinafter.

In an action under Section 210 the federal court rendering judgment under Section 210 is also given the concurrent discretion to award treble damages, attorneys fees and costs dependent on specified aggravating or mitigating circumstances. See the discussion cited above in *Eastern Air Lines, Inc. v. Atlantic Richfield, supra,* (TECA 1983), 712 F.2d at pages 1411 to 1413 inclusive. The authority to award treble damages, if in the action for damages under Section 210 the overcharge is willful, does not change the compensatory nature of the basic federal statutory action for the single amount of the overcharge under Section 210 to an action for a civil penalty for the purposes of application of either of the Pennsylvania statutes of limi-

tations. Nor does the authority to award treble damages in aggravating circumstances justify application of the cause of action concept or the associated doctrines of theory of the case or election of remedies.

Therefore the judgment dismissing the action of appellant for the amount of the overcharge must be reversed.

## II.

*The Question Whether Appellant Has A Meritorious Claim To Recover Treble Damages And Attorney Fees Will Be Remanded For Adequate Initial Adjudication In The District Court*

Because the District Court erroneously and summarily dismissed the action of the appellant without an opportunity for a hearing or possible jury trial on the merits, the facts concerning the possible issues, including but not limited to the alleged single overcharge, and amount thereof, if any, the time of accrual thereof, waiver of claim for refund, estoppel, the alleged continuity of the violations, if any, the presence or absence of intentional overcharge, bad faith, bona fide error, maintenance of procedures reasonably adapted to avoidance of error, requirements of the rule of equity and justice, are not developed in the record. The opinion in *Eastern Air Lines, Inc. v. Atlantic Richfield Co.* (TECA 1983), *supra,* 712 F.2d 1402, at pages 1410 to 1413, discusses the importance of these issues in an action under Section 210. And failure of the District Court to apply the rulings and standards enunciated by the Supreme Court of the United States in *Wilson v. Garcia, supra,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254, would require remand of the judgment of dismissal of appellant's action.

In addition to these possible issues on the merits, is the issue of fraudulent concealment, which was noted as a possibility by the District Court. The availability of the federal doctrine of fraudulent concealment to toll a statute of limitation, in an action under Section 210 was affirmed by this Court in *Ashland Oil Co. v. Union Oil Co.*

(TECA 1977), *supra,* 567 F.2d 984 at page 988.

We are unwilling to render an appellate decision on the nature and the merits of the claim of appellant for recovery of treble damages and attorneys fees in the absence of an opportunity for a plenary presentation of evidence and contentions of both parties in the District Court followed by a judgment thereon.

Nor do we find it appropriate under the present inadequate record to determine finally the significance of note 14 of the *Ashland Oil* case, *supra,* relied on by the District Court and found at pages 990 and 991 of 567 F.2d.

## III.

*Federal Policies Standards And Rulings Enunciated In The Recent Supreme Court Decision In Wilson v. Garcia*

In April 1985 after this action was filed, The Supreme Court of the United States in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254, enunciated the policy, the standards and the rules to be applied by the United States Courts in determining the nature of federal statutory actions, in selecting by analogy applicable statutes of limitations, federal or state applicable thereto.

The opinion in *Wilson v. Garcia, supra,* is obviously designed to produce consistency in decisions of federal courts in this important area of federal jurisprudence. In this recent leading case the Supreme Court of the United States reviewed, summarized and generally recognized and embodied the policies, standards and rulings better reasoned in prior federal decisions to be applied in federal actions authorized by federal statutes without federal statutes of limitations. While the action in *Wilson v. Garcia, supra,* was an action under § 1983, the discussion of policies, standards and rulings was not limited to actions under § 1983. The policies, standards and rulings of *Wilson v. Garcia, supra,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), were not expressed in the reasoning of the District Court below, and are not

cited in the briefs of appellant, or articulated in the brief of appellee in this appeal, except in a minor inconclusive argument of appellee.

We think that the decision in this case on remand must apply to the developed facts the policy, standards and rulings expressed in *Wilson v. Garcia, supra,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254, and in many relevant decisions of the Supreme Court of the United States stated on the subject.

So, we invite attention to relevant discussion of policies, standards and rulings of *Wilson v. Garcia, supra,* by quotation hereinafter from the opinion, adopted by a majority of seven justices.

### The Federal Policies, Standards And Rulings Enunciated In Wilson v. Garcia

The opinion in *Wilson v. Garcia, supra,* is notable as a major comprehensive expression, reconciliation and emphasis of the many recognized decisions in federal jurisprudence developed for application by analogy of state (and federal) statutes of limitations to claims authorized by federal statutes, without a federal statute of limitations. Some but not all these governing policies, standards and rulings are noted hereinafter.

### The Federal Question and The Civil Treble Damage Claims

Early in the opinion the Supreme Court discussed the jurisprudence on the federal interest in the borrowing process, and its historical application in federal antitrust treble damage litigation in the following quotations from *Wilson v. Garcia, supra,* which are parts of more extended discussion:

This interpretation is also supported by Congress' third instruction in § 1988: state law shall only apply "so far as the same is not inconsistent with" federal law. Ibid. This requirement emphasized "the predominance of the federal interest" in the borrowing process, taken as a whole. *Burnett v Grattan,* 468 US, at 48, 78 L Ed 2d, at 43, 104 S Ct, at 2929 [ (1984) ].[18] Even when principles of

state law are borrowed to assist in the enforcement of this federal remedy, the state rule is adopted as "a federal rule responsive to the need whenever a federal right is impaired." *Sullivan v Little Hunting Park, Inc.* 396 US 229, 240, 24 L. Ed 2d 386, 90 S Ct 400 [406] (1969). The importation of the policies and purposes of the State on matters of civil rights is not the primary office of the borrowing provision in § 1988; rather, the statute is designed to assure that neutral rules of decision will be available to enforce the civil rights actions, among them § 1983. Congress surely did not intend to assign to state courts and legislatures a conclusive rule in the formative function of defining and characterizing the essential elements of a federal cause of action. (Footnote omitted.)

In borrowing statutes of limitations for other federal claims,[19] this Court has generally recognized that the problem of characterization "is ultimately a question of federal law." *International Union, etc. v. Hoosier Cardinal Corp.* 383 US 696, 706, 16 L Ed 2d 192, 86 S Ct 1107 [1113] (1966) (§ 301 of the Labor Management Relations Act of 1947, 29 USC § 185 [29 USCS § 185] ). In *DelCostello v Teamsters,* 462 US 151, 76 L Ed 2d 476, 103 S Ct 2281 (1983), for example, we recently declined to apply a state statute of limitations when we were convinced that a federal statute of limitations for another cause of action better reflected the balance that Congress would have preferred between the substantive policies underlying the federal claim and the policies of repose. So here, the federal interest in uniformity and the interest in having "firmly defined, easily applied rules," see *Chardon* [*v. Soto*], 462 US [650], at 667, 77 L Ed 2d 74, 103 S Ct 2611 [2621] (Rehnquist, J., dissenting), support the conclusion that Congress intended the characterization of § 1983 to be measured by federal rather than state standards. The Court of Appeals was therefore correct in concluding that it was not bound by the New Mexico Supreme Court's holding in DeVargas. (Footnote 19 follows.)

(471 U.S. 261, 268–270, 105 S.Ct. 1938, 1943–1944, 85 L.Ed.2d 254, 262–263).

In footnote 19 the Supreme Court discussed the question whether antitrust treble damage actions were more analogous to penal claims or tort, contract or on a statute citing three "better reasoned" cases in which the federal treble damage antitrust claims were held not to be penal. The footnote 19 follows:

19. The problem we address today often arose in treble damages litigation under antitrust laws before Congress enacted a federal statute of limitations. 69 Stat. 283, 15 USC § 15b [15 USCS § 15b]. The question whether antitrust claims were more analogous to penal claims or to claims arising in tort, contract, or on a statute, was treated as a matter of federal law by the better reasoned authority. See, e.g., *Moviecolor Limited v Eastman Kodak Co.* 288 F2d 80, 83 (CA2), cert. denied, 368 US 821, 7 L Ed 2d 26,. 82 S Ct 39 (1961); *Fulton v. Loew's Inc.* 114 F Supp 676, 678–682 (Kans 1953); *Electric Theater Co. v. Twentieth Century-Fox Film Corp.,* 113 F Supp 937, 941–942, (WD Mo 1953); *Wolf Sales Co. v. Rudolph Wurlitzer Co.* 105 F Supp 506, 509 (Colo 1952).

In the "better reasoned" case, *Fulton v. Loew's, Inc.* (D.Kansas 1953), *supra,* 114 F.Supp. 676, holding treble damages in a federal antitrust action not to be an action for a penalty or forfeiture, the District Court noted that the state actions allowing double or treble damages for cutting or carrying away timber, or for a railroad charging one shipper more than another, were not held to be penalties or forfeitures.

If material to final disposition of the treble damage issue, the District Court should consider these federal antitrust cases, cited in footnote 19, *supra,* and other relevant decisions, if any. In the present state of the inadequate record we do not think it desirable that we do so.

### *Other Significant Expressions of Policy Standards and Summaries of Rulings of Wilson v. Garcia*

The majority opinion in *Wilson v. Garcia, supra,* contained many other expressions of federal policy standards to be applied in selecting statutes of limitations to be applied by analogy to claims or actions authorized by federal statute without a statute of limitation. The majority opinion was supported by citations of authorities in 42 footnotes.

Only a careful reading will disclose all the views of the Supreme Court of the United States, which are binding on any trial court ruling on the same questions. Space does not permit more extended quotations from the opinion.

### JUDGMENT ON APPEAL

For the foregoing reasons, it is hereby

ORDERED that the judgment of the District Court be, and it is hereby reversed, and remanded for further proceedings consistent with this opinion.